ABEL LYMAN v. HIRAM DOW.

*Trover. Attachment of property, &c. Officers.*

Where two officers at nearly the same instant took possession of property, each claiming to have attached it, and a contract was made between them, to settle this dispute by a division of the property, *it was held*, that the contract was upon good consideration, and binding upon them, however it might be upon the creditors.

It was also held, that such agreement, (that each should have a *moiety* of the goods so claimed to be attached by both officers,) would preclude them from afterwards raising the question of *priority*.

And though they in fact became tenants in common of the goods, as between themselves, yet if one seized and sold the whole of the goods on his executions, (both sets of creditors having taken the necessary measures to charge the goods in execution,) the other officer can sustain trover, and it is not essential for him to show that he in fact made the first attachment, in order to sustain the action.

TROVER for goods, &c. Plea, the general issue, and trial by jury.

On trial, the plaintiff offered in evidence, two writs of attachment against Chase, Brown & Co., sub-contractors on the Vt. Central Railroad, under one S. F. Belknap, at Sharon and Hartford. One of said writs was in favor of S. B. Mann, and the other in favor of one Charles Brackett, both returnable to the Orange County Court, June Term, 1847. The returns on the said writs showed that the property sued for was taken by the plaintiff, by virtue of said writs of attachment, he being specially authorized to serve the same. The plaintiff also offered in evidence, the records of judgments in said suits, and also an execution in favor of said Mann, dated July 3, 1847, and which appeared to be unsatisfied, for the sum of $222,75. The plaintiff offered proof, tending to show that said execution was delivered to him within thirty days from the rendition of said judgment, and that he, on the 19th day of July, 1847, made demand of the property sued for, and that defendant refused to deliver the same ; that defendant had, on the 17th day of July, 1847, sold the property on executions in his hands. The plaintiff also offered proof of the value of the property sued for.

The defendant offered in evidence, three writs of attachment

against said Chase, Brown & Co., one in favor of one Stephen S. Downer, one in favor of one Alvah Tucker, and one in favor of one Samuel Steele, which writs were served by defendant, as authorized person. It appeared that defendant claimed to take, by virtue of the said writs, the same property sued for. The defendant also offered in evidence, the records of judgments, executions, and evidence, tending to prove that said executions were duly delivered to him within thirty days from the time of the rendition of the said judgments.

There was no question but the property sold on the executions, by defendant, was the same by him attached on the original writs.

It appeared that the property returned on defendant's writs, called the "goods in the store," and "tools on Tucker's ledge," were also returned on the writs served by the plaintiff. The testimony tended to prove, that the "tools" were first taken by the plaintiff from the ledge early in the morning, and placed by themselves, a few rods from the ledge; that the officer there left them, and went away to make attachment of other property. That soon after the officer left, the workmen came to the ledge and took the "tools," and went to work with them as usual.

It also appeared, that not long after, the defendant, with the said writs of attachment, came there, and finding the "tools" on the ledge, without any knowledge of any prior attachment by the plaintiff, or any one else, attached said "tools," and took them into custody, and kept them until sold on the said executions. The "goods in the store" were taken by defendant on said writs, and moved to West Hartford on the same day, and there kept until sold on said executions.

As to the "goods in the store," the testimony tended to prove, that the plaintiff, attended by the creditor Mann, and the defendant by the creditor Downer, arrived at the store about the same time, and finding the store fastened, attempted to force it open, each party struggling to force the door, and keep the other party back. The witnesses for the plaintiff expressed the belief, (though both parties, when they forced the door, rushed in about the same instant,) that plaintiff with said Mann entered first, and the defendant's witnesses expressed the belief that defendant entered first. Both plaintiff and defendant claimed the first right to the goods.

The evidence tended also to prove, that plaintiff, leaving said

Mann to look after the property attached, immediately left, and went to Windsor, to make service of said writs, on said Belknap, as trustee ; and that when he returned, the defendant had made an inventory of the goods, fastened up the store, and the same afternoon removed them to Hartford, as above stated.

It also appeared, that on the next day, the plaintiff and defendant, and said Belknap, met at Sharon village, some five or six miles from where the said goods were taken, at which time, both plaintiff and defendant claimed to have made the prior attachment of said property, and to hold the same; and then and there, without the knowledge or consent of any of the creditors in the writs served by the defendant, it was agreed between the plaintiff and defendant that said "goods" and "ledge tools" should be divided between them, and each should take said Belknap's receipt for an undivided half of the same, the said Belknap having offered to receipt the goods attached.    Receipts were accordingly prepared, but the said Belknap declined giving two receipts, whereupon it was agreed between plaintiff and defendant, that said Belknap should receipt the whole of said goods and tools to the plaintiff, and that plaintiff should give to the defendant a written agreement that he would subsequently surrender one half of said goods and tools to the defendant; this was accordingly done, and Belknap executed a receipt for said property to the plaintiff, and the plaintiff executed a writing to the defendant, to the effect above stated, both of which papers, bearing date May 28th, 1847, were read in evidence.

The said Chase, Brown & Co. having failed, said Belknap was obliged to resume the work, and it was understood that the property so receipted, should be used by said Belknap on said work ; and at the same time it was agreed that the defendant should take charge of the work, and possession of the property, as agent for the said Belknap, which he immediately did.

The creditors, for whom the defendant made the attachments, having obtained judgments by confession, against said Chase, Brown & Co., on the 26th day of June, 1847, put their several executions into the hands of the defendant, with directions to sell the whole of said property thereon, and having indemnified him therefor, he proceeded to advertise and sell the same on the 17th of July, as before stated.

The defendant requested the court to instruct the jury—1st, that

unless the plaintiff took and held, either by himself, or some person employed by him, actual custody of the "tools and goods" before and up to the time of the attachment of the same by the defendant, he acquired no such interest in or lien upon the same as would enable him to maintain this action; 2d, that unless the plaintiff made a valid attachment of said "tools and goods" on the 27th, the agreement entered into on the 28th, at said Sharon village, could not, under the circumstances, invest the plaintiff with such interest or lien as to sustain this action; 3d, that if said agreement did invest the plaintiff with a lien upon an undivided half of said "tools and goods," it constituted a tenancy in common between the parties, and the plaintiff could not recover in this action under the circumstances detailed.

The court declined to so instruct the jury, except as to the first request, which was complied with; but as to the second and third requests, the court instructed the jury as follows: That if the attachments of said tools and goods were made by the plaintiff and defendant at such time and manner as to render it doubtful which had the priority, and could hold them legally, they might make such an agreement for a division of the property; and if they found that defendant' relinquished his right to hold said property by virtue of his attachments, and consented that the same should be held by the plaintiff upon his attachment, and that Belknap should receipt the same to the plaintiff, and that. defendant thereafter relied upon the written agreement he had taken from the plaintiff to return one half of the property, and that the possession of the property by the defendant after this time was not as an officer holding the same by virtue of his attachment thereof, but as the agent of the said Belknap, and that afterwards, in violation of such arrangement, and without the knowledge or consent of the plaintiff, the defendant sold and disposed of the whole of said property, he would be liable to the plaintiff in this action for the value of one half of said "goods and tools" included in said arrangement; and that in this view, there was no such tenancy in common between plaintiff and defendant, as would prevent the plaintiff from maintaining trover. The jury returned a verdict for plaintiff.

To the refusal of the court to charge as requested, and to the charge, the defendant excepted.

*Tracy, Converse* and *Barrett* for defendant.

Defendant was entitled to the charge as requested.

I. Plaintiff could acquire no interest in, or lien upon, the property, except by seizing the same by virtue of the writs of attachment.

No *agreement,* not even that of the party, much less a third person, could give him such lien.

This is not like a case where an officer takes a *receipt* for property which he returns as attached, and which he never seizes, and which may in fact have no existence. In such case, the receipt man is estopped from denying the attachment.

In this case, the plaintiff claims the property by virtue of his having *lawfully attached* it; not on the ground that defendant had *admitted* he had done so.

Plaintiff knew whether he had attached it or not. If he made a return of an attachment when he had made none, it was his folly. He was not deceived into it.

II. Belknap's receipting the property to him, with defendant's consent, can make no difference, as Belknap would be permitted to show, in a suit upon his receipt, that plaintiff acquired no lien upon the property. That it belonged to a third person. *Adams* v. *Fox,* 17 Vt. 361.

Cannot defendant exercise the same right that Belknap could?

III. If plaintiff made no valid attachment, there was no consideration for defendant's agreement. Nor did defendant deceive him as to the attachment, and thereby induce him to return the same as attached.

IV. In no event could plaintiff claim to recover, unless liable over to creditor. No liability accrued, unless plaintiff made a *valid attachment,* nor even then is it certain. Plaintiff was a mere deputized person, and acting under special directions of creditor Mann, who was present and knew whether the attachment was valid or not. Mann could in no way be deceived about it.

Plaintiff could show, in defence to suit by creditors, that he acquired no lien on the property by the attachment.

V. Defendant had no power to make any disposition of the property, except what the law pointed out. He was the mere *instrument of the law.*

The moment he stepped aside from what the law authorized, he was powerless.

XXV.    27

Much less could he affect the title to, or lien upon, the property without the consent of those creditors for whom and under whose directions he seized it.

VI. If the agreement of parties to divide the spoils was binding, it made them tenants in common, and this action cannot be sustained.

*E. Weston* and *J. P. Kidder* for plaintiff.

The plaintiff insists there is no error. From the evidence, as detailed in the bill of exceptions, under the charge of the court, the jury must have found the following facts:

That plaintiff, by virtue of his writ of attachment, took and held the "tools" and "goods" in his actual custody, before and up to the time of the attachment of the same by defendant; that defendant, to save all question about the priority of the attachment, relinquished his right to hold the same by virtue of his attachment, to the plaintiff, and consented that plaintiff might hold the same by virtue of his, plaintiff's, attachment; and agreed that Belknap should receipt the same to plaintiff, and that defendant relied upon the plaintiff's written agreement to return to him one half; and that the possession by defendant thereafter was not as an officer, but as agent or servant of Belknap.

We think that under these facts, *trover* will lie.  4 Eng. Law and Eq. Reports, 510.  *Wiles* v. *Woodward*.

We think that defendant had authority to make the agreement, and that at all events, he is concluded by his agreement, even if he made himself liable to the plaintiff in his attachment.

The opinion of the court was delivered by

BENNETT, J.  Both parties claim to have attached the property, and have made return accordingly, and the dispute between them, which had the *priority*, was a serious one.  The contract between them to settle this dispute, by a division of the property, was made upon good consideration, and is binding upon them, however it might be upon the creditors who had attached.  Unless they consented to this division, they might doubtless call the officers to an account for the property attached; but under the attachment, the officers were the only persons who had gained a special legal right in the property attached; and the agreement between the of-

ficers, that each should have a *moiety* of the goods in question, must bind them, and they cannot, after this, raise the question of *priority.* They in fact, by their own agreement, became tenants in common in regard to their special property in the goods, as between themselves. Though all the goods were to be receipted to the plaintiff, yet he was to deliver one half of them to the defendant.

It seems, that each set of creditors took the necessary measures to charge the goods in execution, and as the defendant seized and sold the whole of the goods on his executions, the action of trover, under the decisions in this State, will well lie, (though it be conceded that the officers are to be regarded as tenants in common after this agreement,) and that it is not essential for the plaintiff to show that he, in fact, made the first attachment in order to sustain this action.

The judgment of the County Court is affirmed.