#### OF THE

## STATE OF WASHINGTON,

##### AT THE

# OCTOBER SESSION, 1892.

[No. 411.   Decided October 11, 1892.]

JAMES PARKE, *Appellant*, v. THE CITY OF SEATTLE, *Respondent.*

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — INJURY TO ABUTTING LAND — LATERAL SUPPORT.

In this state a municipal corporation is liable for any damage caused in grading a street whereby lands abutting thereon are deprived of lateral support, although the damage may have been occasioned prior to the adoption of the constitutional provision requiring compensation for private property "taken or damaged for public use."   (HOYT, J., dissents.)

Where a municipal corporation in grading a street so negligently excavates the earth that the abutting land is deprived of lateral support to such a degree that buildings and improvements thereon suffer injuries, to which their own weight has not contributed, damages may be recovered therefor.   (HOYT, J., dissents.)

| 5 | 1 |
|---|---|
| 5 | 38 |
| 5 | 45 |
| 31* | 310 |
| 31* | 314 |
| 32* | 82 |
| 32* | 214 |

| 5 | 1 |
|---|---|
| 8 | 79 |
| 31* | 310 |
| 35* | 594 |

| 5 | 1 |
|---|---|
| 18 | 487 |

| 5 | 1 |
|---|---|
| 20 | 617 |

| 5 | 1 |
|---|---|
| 33 | 621 |

| 5 | 1 |
|---|---|
| 38 | 523 |

| 5 | 1 |
|---|---|
| e41 | 493 |
| 41 | 497 |

*Appeal from Superior Court, King County.*

*Greene & Turner,* for appellant:

That is a taking which destroys substantial value and inflicts irreparable and permanent injury, or is a serious interruption to the common and necessary use of the property.   Constitutional provisions aim to give the same pro-

tection against encroachment by the public that the proprietor has against encroachment by private individuals. The proprietor suffers equally in the one case as in the other, and natural equity and justice demand that he should be equally protected in the one case as in the other. The doctrine that public bodies are not liable for consequential damages has been pushed too far, and the term "consequential" has been made to include too much. *Pumpelly v. Green Bay Co.*, 13 Wall. 166; *Eaton v. Railroad Co.*, 51 N. H. 504. As to the true application of the term "consequential," compare *Callender v. Marsh*, 1 Pick. 418, and *Thurston v. Hancock*, 12 Mass. 220.

A municipal corporation, in the control and improvement of streets for public use, will be liable for damages caused to private property by grading streets where a private owner of the soil through which the street is laid would be liable for improving it in the same way for his own use. *Callender v. Marsh, supra; Thurston v. Hancock, supra; Keasy v. Louisville*, 4 Dana, 154; *Humes v. Knoxville*, 1 Humph. 403; *Rhodes v. Cleveland*, 10 Ohio, 160; *Keating v. Cincinnati*, 38 Ohio St. 141; *Nevins v. Peoria*, 41 Ill. 507; *Quincy v. Jones*, 76 Ill. 231; *Transportation Co. v. Chicago*, 99 U. S. 635. The right to lateral support of lands stands upon natural justice and is essential to the protection and enjoyment of property in the soil, and the owner of the land is entitled to damages for the destruction of such support. *Gilmore v. Driscoll*, 122 Mass. 199; *Cincinnati v. Penny*, 21 Ohio St. 499; *Richardson v. Vermont Central R. R. Co.*, 25 Vt. 465; Elliott on Roads and Streets, p. 350.

Damages to buildings, as well as damages to land, are recoverable when the weight of the buildings does not substantially contribute to the mischief. *Keating v. Cincinnati*, 38 Ohio St. 141.

*Orange Jacobs*, and *George Donworth*, for respondent.

The opinion of the court was delivered by

STILES, J.—The appellant, as plaintiff in the superior court, brought this action against the city of Seattle to recover damages from the municipality for so negligently excavating certain streets abutting upon his premises as to cause the hillside, of which his premises formed a part, to bodily slide down into the streets, and thus cause great and permanent impairment of the value of his premises, and the destruction of his buildings and other improvements. To the complaint the defendant demurred, and the demurrer was sustained, and judgment against the plaintiff rendered accordingly.

The premises were at the intersection of Sixth and Mill streets. The improvements, which embraced a house, outbuildings, fence, lawn, shrubbery, etc., all worth $5,000, were made in 1886, and the alleged damage was done at some time before the adoption of the constitution, in 1889. The complaint charged:

"(4) That at the time of making said improvements, and always up to the time of the commission of the grievances hereinafter mentioned, the soil and earth of said premises, and the adjoining soil and earth of said Mill and Sixth streets, and of said alley, and the soil and earth immediately to the eastward of said premises and alley, sloped downward from east to west at an average and natural rate of, to wit, one foot vertical to four feet horizontal, and the soil and earth of said premises were so related to the soil and earth in said Sixth and Mill streets adjoining said premises, and to the soil and earth in said alley adjoining said premises, and to the soil and earth lying within several hundred feet immediately to the eastward and northward of said alley and premises, that the soil and earth of said Sixth and Mill streets, adjoining said premises, formed the natural and necessary support of the soil and earth of said premises, and formed, together with the soil and earth of said premises, the natural and necessary support of the soil and earth in said alley adjoining said premises, and formed, together

4     PARKE v. SEATTLE.

Opinion of the Court — STILES, J.   [ 5 Wash.

with the soil and earth of said premises, and the soil and
earth of said alley adjoining said premises, the natural and
necessary support of the soil and earth immediately to the
eastward and northeastward of said alley and premises; all
which the said city at the time of the commission of said
grievances, and at all times, well knew. (5) That, after
the making of the improvements mentioned in the third
paragraph of this complaint, said city graded said Mill
street, and so carelessly, negligently and unskillfully exca-
vated the soil and earth in said Mill and Sixth streets,
adjoining said premises of plaintiff, and so carelessly, neg-
ligently and unskillfully left such excavation without any
proper or any means of support for the soil and earth of
said premises, or for the soil and earth of said alley adjoin-
ing said premises, or for the soil and earth lying immedi-
ately to the eastward and northeastward of said alley and
premises, that all the soil and earth of said premises, and
of said alley adjoining the same, and all the soil and earth
for several hundred feet immediately to the east and north-
east of said alley and premises, all forthwith began, and
thenceforth hitherto have continued, and still continue, and
will indefinitely continue, to creep, slide, move and go
southwesterly and downwards in the direction of said slope,
and upon, over, across and off of said premises and into
said Sixth and Mill streets and Yesler avenue, in such
quantities and to such an extent that much more and many
times more soil has long ago fallen into said Sixth and Mill
streets out and off of said premises by reason of said exca-
vation and said carelessness, negligence and unskillfulness
than was or is sufficient to give the natural slope of such
earth for such excavation, and in such manner and to such
an extent that great quantities of soil and earth have come
and are coming upon said premises out of and off of said
alley, and out and off of the land immediately to the east-
ward and northeastward of said alley and premises, by
reason of said excavations and said carelessness, negligence,
and unskillfulness, all to the great injury and destruction
of said premises, and the said improvements thereon, and
to the damage of plaintiff in the sum of seven thousand
seven hundred and twelve dollars ($7,712); that such creep-
ing, sliding, moving and going were not, nor was or is any

of the same, caused by, or in any measure or degree caused by, or attributable to, the weight of or otherwise to said buildings or improvements, or any thereof, or any part thereof.''

This pleading presents the question whether, before the constitution, a municipal corporation was liable for any damage caused by its having taken away the lateral support from lands abutting on a street which it was grading. Two grounds of recovery are urged, viz.: *First*, The damage to the land by causing it to slide off; and, *secondly*, the damage to the improvements on the land. If this suit were between private persons, the first element of damage would be recognized as proper if there was substantial injury done, but the recognition of the second would depend on whether there was negligence on the part of the excavator in making his excavation. This summary of the rule is amply considered and explained in *Gilmore v. Driscoll*, 122 Mass. 199. But the respondent objects that because it was engaged in a lawful opening and improving of streets it cannot be held liable for such injuries. The basis of this claim is that such injuries are what the courts term ''consequential,'' which are without remedy. There is no doubt that what are termed ''consequential'' injuries are by most of the courts held to be remediless, although nearly all of the courts in this country have at one time or another regretted the existence of such a rule, and that they could not under the law follow the decisions of the supreme court of Ohio, which are to the contrary. Yet we find a number of the states granting relief in cases of the particular character of the one at bar, and although they are sometimes loosely denominated ''consequential injuries,'' the fact is that they are not consequential, but direct, injuries. Judge Dillon, in his Municipal Corporations (§ 991), says:

'' Where the power is not exceeded, there is no implied or common law liability to the adjacent owner for grading

the whole width of the street, and so close to his line as to cause his earth or fences and improvements to fall, and the corporation is not bound to furnish supports or build a wall to protect it.   The abutting owner has, as against a city, no right to the lateral support of the soil of the street, and can acquire none from prescription or lapse of time.''

He also says, in § 990:

''There is no such implied or common law liability, even though in grading and leveling the street a portion of the adjoining lot, in consequence of the removal of its natural support, falls into the highway.''

This authority is strongly relied upon by the respondent in this case, but after a careful examination of the citations made by the learned author, while we do find his text is fully sustained in very numerous cases in England and in this country, where purely consequential injuries have been suffered, we also find that the cases which he cites to support the proposition that the abutting owner has, as against the city, no right to lateral support, do not sustain him.   In all these cases cited it was either the inconvenience of access caused by the change of grade or the necessity of going to expense in sustaining the weight of buildings erected upon the abutting owner's land close up to the line of the street, that was the ground of the action.   No one of them was maintained for the removal of the lateral support of the abutter's land.   It is more than likely that in these cases no damages were sought for the caving of the land itself, because the actual damage resulting from such a caving in most instances would be but little, if anything, more than nominal; but where the caving or sliding is as extensive and material as it is in this case, and knowledge of the nature of the soil, and of the certainty that it would cave and slide, is charged upon the city, as appears by the complaint in this case, it would certainly be a great hardship, indeed, if the city could go on with gross reckless-

ness to remove what it must have seen was the only support
for the whole hillside.    Knowledge of the character of the
soil, and of its certainty to cave so as to materially injure
the beneficial use of the land, would make it negligence for
the city to go on with its work without providing means
to resist the threatened calamity.

A similar view was taken of this matter in the case of
*Keating v. Cincinnati*, 38 Ohio St. 141, where the facts
were almost identical in every particular with those at bar.
That case was decided not alone upon the authority of the
Ohio cases, the peculiarities of which have been alluded to,
but upon that of other leading, well-considered cases, par-
ticularly that of *Gilmore v. Driscoll*, cited above.    The
same court had previously held, in *City of Cincinnati v.
Penny*, 21 Ohio St. 499, that the corporation was not liable
for damages to buildings caused by negligence in making
the excavation, where their weight contributed to the in-
jury.    See also the very recent case of *Stearns' Ex'r v.
City of Richmond* ( Va.), 14 S. E. Rep. 847.    In that case
the right to recover was extended to buildings.    The court
used this language:

"Every owner of land is entitled, as against his neigh-
bor, to have the earth stand and the water flow in its natu-
ral condition.    .    .    .    In the case of land, which is
fixed in its place, each owner has the absolute right to have
his land remain in its natural condition, unaffected by any
act of his neighbor; and, if the neighbor digs upon or im-
proves his own land so as to injure this right, an action
may be maintained against him without proof of negli-
gence.    And although this natural right does not extend
to buildings increasing the downward and lateral pressure,
and therefore, if damage is done to them by digging in the
adjoining soil, no action can be maintained therefor unless
negligence be proved, yet it is settled by the recent decis-
ions in England, and it would seem clear upon principle,
that where land upon which there are buildings slides or
subsides by reason of such digging, and the buildings are

in consequence damaged also, and their weight in no way contributed to the result, then the damage done to the buildings may be taken into consideration in estimating the damages.'' *Brown v. Robins*, 4 Hurl. & N. 186; *Stroyan v. Knowles*, 6 Hurl & N. 454; Lewis, Em. Dom., §§ 100, 151.

The time has been when it was the fashion of courts to regard the state or its instruments (municipal corporations) as in some way superior in their right to do mischief to the individual over private persons; as, for instance, in *St. Louis v. Gurno*, 12 Mo. 414, where a city which improved a street under competent authority was held not responsible for any damage it might cause by defects in the plan of its improvement whereby masses of water were thrown upon the lands of abutting owners, although it was conceded that if the plan were negligently executed there might be liability. But such cases have since been substantially overruled, as *St. Louis v. Gurno* was expressly overrulled in *Thurston v. City of St. Joseph*, 51 Mo. 510, on the ground that the casting of masses of water and earth upon the premises of an abutting owner is a taking of lands, within the constitutional prohibition. The leading case of *Pumpelly v. Green Bay Co.*, 13 Wall. 166, set at rest all such claims on the part of public corporations, and is of especial authority in this case, the facts of which occurred during our territorial existence. Speaking of these consequential injuries, and the ruling of courts thereon, the court said:

''But we are of the opinion that the decisions referred to have gone to the uttermost limit of sound judicial construction in favor of this principle — that is, the non-liability for consequential injuries — and in some cases beyond it, and that it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it so as to effectually destroy or impair its usefulness,

it is a taking, within the meaning of the constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle.''

But what possible distinction there can be between the injury which is occasioned by casting water, earth, sand or other material upon one's land, and having the entire surface of the land dragged or forced away, it is hard to comprehend. Wherein is the one less a "taking" than the other? Another case in the United States supreme court is that of *Transportation Co. v. Chicago*, 99 U. S. 635. The plaintiff owned warehouse property which abutted upon La Salle street and the Chicago river. The city, in building a tunnel under the river, excavated the street and erected a cofferdam in the river, the effect of which was to cut off access to the warehouses from both the street and the river during the time the work was in progress. This injury, and certain alleged injuries to the building, by reason of the negligent excavation, were sued for. It will be observed that the temporary obstruction of the access was purely a consequential injury, which, the court held, there could be no recovery for. But after ruling on this point against the plaintiff, the circuit court charged the jury that if they found that the injuries to the building were caused by the negligent and unskillful manner in which the work was done by the city, and not by reason of the weight of the building, and if the building had not been repaired so as to make it as useful for the plaintiff's purposes as it was before the injuries occurred, then the plaintiff would be entitled to such damages as would make it as useful for its purposes. On appeal the supreme court said concerning this charge:

''There was evidence at the trial that during the progress of the necessary excavation of La Salle street a portion of the walls of the plaintiff's buildings on the lot cracked and sunk. This was caused by the caving in of the excavation

in the street, the timbers used for bracing the sides having given way. . . . We think this instruction was entirely right. The general rule may be admitted that every land owner has a right to have his land preserved unbroken, and that an adjoining owner excavating on his own land is subject to this restriction; that he must not remove the earth so near to the land of his neighbor that his neighbor's soil will crumble away under its own weight and fall upon his land. But this right of lateral support extends only to the soil in its natural condition.''

See, also, *Thurston v. Hancock*, 12 Mass. 220.

The complaint in this case is sufficiently specific in describing the acts constituting the alleged negligence through which the plaintiff suffered injury to meet the requirements of good pleading. The judgment will therefore be reversed, and the cause remanded for trial.

ANDERS, C. J., and DUNBAR, J., concur.

SCOTT, J., dissents.

HOYT, J. (*dissenting*).—It is possible that the complaint to which the court below sustained the demurrer could be held good upon the ground that it sufficiently charged that the city, in prosecuting the work of grading the street, did so negligently and carelessly, and that for that reason it was liable to the plaintiff. But the majority of the court does not seem to have given any force to this particular language in the complaint, and have in their discussion treated it as having simply charged that the city had, in grading the street, removed the lateral support from plaintiff's lots to such an extent that the soil thereof in its natural state slid or fell into the excavation thus made, and that the city was liable for the injury occasioned thereby, by reason of its having thus removed such lateral support. The majority of the court decides that the right of a city to improve its streets, and in so doing change the surface thereof, is governed by the same rules, as to liability for

injury to adjoining property, as is a private owner in changing the surface of his lot. This is the principal question discussed, and upon which the case is decided. I am unable to agree with this conclusion. I therefore deem it necessary to express my dissent therefrom, and, as I view the question thus decided as one of the most important ones that has been presented to this court for decision, shall at some length state my reasons for thus dissenting.

The majority of the court seems to hold that the injury to property of a private owner, resulting from the removal of its lateral support, is a direct and not a consequential one. With this proposition as a basis, an argument of much force has been built up in favor of holding cities liable for the removal of such lateral support. But even with this basis the argument is not conclusive, as will be hereafter more fully stated.

Many considerations must control the action of courts in establishing the proper rule in regard to the question under consideration, and it by no means follows that, even if the injury in question is the direct and not the consequential result of the act of the city in bringing the street to grade, the city ought to be held liable for damages occasioned thereby. In my opinion, however, the injury thus done to the lot is a consequential and not a direct result of the grading of the street. As I understand the rule, a direct result is one which immediately and necessarily follows the act. A consequential result is one which does not thus follow the doing of the act. If in every case the falling of the soil of the adjacent lot followed immediately and necessarily upon the removal of the supporting earth in making the excavation, there would be a greater reason for holding that it was a direct and not a consequential result of such removal. If, at the time any excavation was made, the adjoining soil necessarily and

immediately slid or fell into the excavation, it would in effect be the same as though the one making the excavation had directly removed the soil on the adjoining lot. Such, however, is not the ordinary result of making an excavation. The soil may be such that, if the excavation extends to the extreme limit of the street, that of the adjoining lot may never slide into the excavation. And when it does slide, it seldom or never does so to the full extent that it eventually will, immediately upon the earth being removed in making the excavation.

It is no doubt true that in some instances the nature of the soil might be such that that of the adjacent lot would fall immediately upon the support being removed, but such is not usually the case, and the nature of the injury done to the adjoining lot cannot be controlled by such exceptions to the general rule. It would not do for courts to hold that in most cases the injury occasioned by grading was consequential for the reason that it did not immediately and necessarily follow from the act done, and in special cases where it did so follow, that it was direct. The rule established in regard to the matter must be uniform, or questions of fact in each particular case of such nicety and difficulty would be presented as greatly to embarrass corporations and courts.

In my opinion, simply as a question of principle, uninfluenced by the decisions of courts which will be hereafter noticed, the injuries resulting to a lot from the removal of the lateral support to the soil thereof, must, under the general rule applicable to the subject, be held to be consequential rather than direct. Under the old rules of pleading, if the result could be said to be direct and necessary, an action of trespass could be maintained. Yet, in my opinion, no lawyer, familiar with the common law and the rules of pleading thereunder, would have thought of bringing tres-

pass against one who had removed the lateral support of the land of his client, but instead thereof, would, without hesitation, have brought an action in case.

In the brief examination which I have been able to give to this particular question, I have found numerous actions in case which have gone to judgment, for injuries of this nature, without any question as to the proper remedy having been sought, and have not found a single case where for such injuries an action of trespass has been maintained. If the injury in question is consequential, and not direct, then it is clear that under the provisions of the constitutions of most of the states, and of the constitution of the United States, the city would not be liable, if the injury resulted from work done by the city in pursuance of authority conferred upon it by the legislature. It is universally held that such corporations when so proceeding are not liable for consequential injuries. They are held liable, if liable at all, by virtue of a provision in the constitution of the state where the question arises that private property shall not be taken for public use. And it has never been held that an injury to private property, consequent upon, but not directly flowing from, the acts of the corporation, constitutes a taking within such constitutional inhibition. If the city is liable it must be by reason of the rule at common law, or of some provision in the constitution of the state or of the United States. That no such liability existed in England at the time we took from her the common law is too clear for argument and is in fact conceded by all. There is no constitutional or legal provision that has any tendency to create such liability, except the one that prohibits the taking of private property for public use without compensation. It must follow that, whenever the injury is such that it does not constitute a taking within the meaning of such provision, there can be no compensation had therefor.

To hold that a city in changing the grade of its streets is governed by the same rule as to resulting damages as a private owner would be to deny the city the usual protection awarded an agent of the state acting in pursuance of a public law. A private person is held liable in numerous instances for acts which would create no liability on the part of the public at large or one acting under their authority. If a private person takes another by the arm and compels him to go with him against his will, he must respond in damages; but an officer, acting under the authority of the law, may do exactly the same thing with impunity. Why is this? Simply because in one instance a person is acting in his own behalf, and is held responsible for any interference with the rights of another; whereas, in the other case he is acting as the agent of the state and for the good of the public generally.

This single illustration will show the distinction, which is always acknowledged and enforced by courts, by which one acting under public authority is protected where one acting without such authority would be clearly liable. When a city proceeds, in pursuance of law, to grade one of its streets, it is acting as the agent of the state and in pursuance of public authority, and cannot be held liable for any injuries done to a private person unless he is protected against such injury by the action of the legislature or by the constitution of the state. That this rule works individual hardship in special cases is unquestioned, but so does every rule for the benefit and protection of the public. The public as a whole have a right to interfere just so far with individual rights as in its judgment is necessary for the public good, and such public is in no manner responsible to private persons for damages resulting from such acts.

Under our form of government this public is represented by its legislature, and whatever it deems necessary for the

public good must be presumed so to be. Its decision may
interfere more or less with private right, but so long as the
constitution is not violated there is no other remedy than
that which the legislature itself may provide. Instances
of the invasion of private right for the good of the public,
under authority of law, for which there is no redress, are
very numerous and need not be cited, as they will occur to
all who give the matter thought. It may be stated as a
general proposition that private rights must yield to public
requirements, and it rests entirely with the public at large
to say whether or not the damages resulting from such
yielding shall be compensated for. The recognized exist-
ence of this power in the public at large as represented by
their legislature, unless controlled, has led to the adoption
of constitutions, and to the extent that these constitutions
protect private rights the legislature is restricted from in-
terfering therewith, and to no greater extent.

The improvement of roads and streets is an absolute ne-
cessity. The state in providing therefor may do so directly
or may delegate its power to various municipalities created
for that and other purposes in aid of proper government.
In the prosecution of such work by the state or by its
properly constituted agents it has a right to proceed in a
reasonable manner, and private persons whose rights may be
injuriously affected by such action are absolutely without
remedy, excepting such as may be furnished by the consti-
tution or legislation had thereunder.

And when we look at the consequences of an application
of the contrary rule, the necessity for such a construc-
tion in the public interests will be made clear. If the doc-
trine be once established that the same rule applies, as to
responsibility for lateral support, to excavations made by
the public in the grading of streets or highways, as would
obtain in the case of an excavation made by a private owner
upon his property, it must follow that wherever an exca-

vation is so made that any appreciable amount of the soil of the adjoining lot slides or falls into the same, an action for damages will lie.    And if an action for damages will lie, it would follow, almost as a necessary conclusion, that until the same had been regularly ascertained and tendered or paid, the work could not be proceeded with.    This would compel the proper authorities, who had control of the streets within the cities or of the highways outside thereof, whenever they desired to do any work thereon which might by any possibility require such an excavation to be made that the soil of an adjoining proprietor might fall therein, to determine beforehand by the most careful surface survey the extent to which such excavations would be made and the amount of soil which would fall from the adjoining lots on account thereof, and show the same by the most exact profile and figures, and have the damages on account of such falling soil determined and paid before they proceeded at all with the improvement, or else place it within the power of any one, the soil of whose lots might fall into such excavation in the least material degree, to stop the work until such proceedings and compensation could be had.    Such a course would be practically impossible, even in cities, and as regards highways situated outside it would make it impossible to improve the same at all in the way that it is now ordinarily done, excepting at the peril of having the work arrested, at such a time during its progress as to very greatly interfere with the rights of the public, by any private owner who in good faith or bad faith might desire thus to take advantage of the fact that a wagon load or so of soil from his lot had slidden or would slide into the excavation made or to be made in the progress of the work.

The results following from the enforcement of such a rule would be so burdensome upon the public that it would not be adopted by the courts unless compelled so to do by an expression of the will of the public, in the constitution

or legislation thereunder, so clear that it would admit of no other possible construction. It is one of those cases where private interests must yield to those of the public. As a general rule, the private interests which would be thus affected are very small as compared with the burdens which would be put upon the public by their protection. As we have said above, cases of great individual hardship will no doubt happen, but that is ever incident to a state of society where the rights of the public must be held to be paramount.

What I have said above has been upon the theory that the private owner had received no compensation whatever for the injuries which he might sustain by reason of the grading of the street. In my opinion, however, he must be held to have received full compensation for all the damages incident thereto. If the street was dedicated to public use by the owner, he must be held to have so dedicated it for the use of the public as such street, and must have contemplated such a reasonable improvement thereof as would adapt it to the purposes for which it was designed. This, of course, would include such a change in the surface as would best adapt it to the public use. If it was purchased of a private-owner he knew the purposes for which it was so purchased, and in fixing his price therefor could protect himself for injuries incident to the proper use thereof for the purposes for which it was purchased. If it was taken by virtue of the right of eminent domain, the damages awarded upon such taking must be held to cover not only the valuation of the land taken, but also the incidental damages resulting from its proper use for the purposes for which it was taken.

It will thus be seen that in whatever manner the public has obtained the right to the use of the street, the owner has been or might have been fully protected from damages incident to the improvement thereof, and if, whenever the

2—5 WASH.

surface is changed, he is allowed to recover damages it will be for the same elements which were or might have been taken into consideration at the time the property was originally acquired for public use. Upon principle, then, I am of the opinion that a private owner should be held to have no remedy as against the public proceeding diligently in the matter of the improvement of a street, for injuries done to his property by removal of its lateral support.

I shall now proceed to discuss the question in the light of the authorities upon the subject. They are very numerous and I shall not attempt to review all of them, but the importance of the question is such that I deem it proper to call special attention to some of the leading cases. However, before proceeding to a detailed examination of the cases bearing upon the question, I desire to say a few words in reference to the cases cited by the majority of the court as sustaining the doctrine announced by them. And first as to what is therein said in reference to the language used by Judge Dillon in his work on Municipal Corporations, and the authorities cited by him to sustain the text. If it is meant by what is said in regard to this matter that a large number of the cases so cited by Judge Dillon were not lateral support cases, then the criticism is true; but if in what is said it is meant that the cases thus cited were not of such a nature as to fully warrant their citation in support of the text, then I must respectfully dissent from the conclusion in that regard. I have carefully examined every case so cited and shall hereafter summarize some of them. I desire, however, to here state generally that, as I read these cases, several of them are exactly in point, as they were lateral support cases. The others fully support the principle announced by the learned writer in the text. Those of them that were not exactly in point cite those that are, and in none of them is there the least intimation that a different rule would have been announced

had the injuries been from a deprivation of such lateral support instead of the consequent injuries under discussion. And in view of the fact that lateral support cases were so cited, it is clear that if there had been any intention on the part of the courts deciding such cases to distinguish as between them and those under consideration, something would have been said upon the subject.

The majority of the court rest their decision upon this criticism of the authorities cited by Judge Dillon, and upon the authority of the case of *Stearns' Ex'r v. City of Richmond* (Va.), 14 S. E. Rep. 847, which seems to fully sustain their views; upon the cases in Ohio, some of which likewise sustain them, and upon the two cases by the United States supreme court, of *Pumpelly v. Green Bay Co.*, 13 Wall. 166, and *Transportation Co. v. Chicago*, 99 U. S. 635. As to the last two cases, it is not claimed that either of them is exactly in point, but simply that they have a tendency to sustain the views expressed. In the general review of the cases upon the subject under consideration, my conclusions as to what the supreme court of the United States has decided will appear. These are the only cases cited which tend to support the contention that the public is liable for the removal of lateral support in the improvement of a street, and with the exception of the two Minnesota cases cited hereafter are, I think, all that can be found in the books.

Three or four other cases are cited, but they all go to the question of the liability of a private party. The case of *City of St. Louis v. Gurno*, 12 Mo. 414, is also cited, but only for the purpose of stating that the same had been overruled by the case of *Thurston v. City of St. Joseph*, 51 Mo. 510. But that such is not the case, so far as the question at bar is concerned, will, I think, fully appear in the course of my examination of the Missouri cases.

I shall now proceed to a somewhat full review of the

authorities upon the subject as I find them. As to those from England, it is not necessary that a review should be had, as it is conceded that they assert to the fullest extent the doctrine of non-liability of a city for injuries like those under consideration. In this country the cases are so numerous that it will be impossible to review all of them. I shall, therefore, state somewhat fully those from the supreme court of the United States, from the State of New York, and from a few of the other states, and content myself with a simple reference to some of the others.

The majority of the court recognize the special application of the decisions of the supreme court of the United States to the question under consideration. I also think such decisions not only of special force, but in view of the fact that this controversy arose during our territorial period, I think that such decisions should absolutely control ours. From my investigation of such cases I think the doctrine of non-liability, as I am contending for it, has been fully recognized and decided by said court.

The case of *Pumpelly v. Green Bay Co.*, *supra*, is relied upon as establishing a contrary doctrine, but I am unable to so interpret this case. If the question at bar had never been decided by this court at the time the opinion was rendered, there might be some ground for such contention; but the language used in that opinion must be interpreted in the light of decisions theretofore rendered by the court. If it had been intended in any manner to overrule the former decisions, it would have been so stated in the opinion.

In the case of *Goszler v. Corporation of Georgetown*, 6 Wheat. 593, this question was before the court, and with very slight discussion the court held that for damages like those in the case at bar the city was not liable, and the main discussion in the case was as to the question whether or not the city in doing the work was proceeding under proper authority.

In the case of *Smith v. Corporation of Washington*, 20 How. 135, there was a full discussion, and the facts in the case called for a decision of the exact question at bar, and the court in refusing any relief to the plaintiff go into a general discussion of the principles involved and cite numerous authorities in support of their conclusion, among which are the leading ones from New York and Massachusetts which specially apply to the doctrine of non-liability of a city for the removal of the lateral support to adjoining property in the course of the work of reducing its streets to a proper grade.

In view of what had been decided in these cases, the decision in the case under consideration must be confined to the facts before the court, and to the holding necessary to the decision of the case, which was that the actual invasion of the property of the adjoining proprietor by the flooding thereof was a taking within the meaning of the constitution of the State of Wisconsin. This would be clear, in my opinion, if we had no further light upon the question, and when examined in the further light disclosed by the opinion of said court in the case of *Transportation Co. v. Chicago, supra*, I cannot see how there can be left any doubt as to such having been the full extent to which the court in that case intended to go.

In the last named case the court lays down the general doctrine that in grading its streets the city is the agent of the state and performing a duty imposed upon it by the legislature, and that if it acts within its jurisdiction it is not liable for consequential damages; and cites among other cases several where the question of lateral support was the only one involved, without any attempt to discriminate as between such cases and those where the injury complained of is conceded to have been consequential. In said case the former one of *Pumpelly v. Green Bay Co.* is to a certain extent reviewed, and it is stated that the doctrine an-

nounced in said last named case presents the extremest qualification of the doctrine of non-liability to be found in the books.    If to hold the corporation liable for the actual flooding and thus substantially taking the lot of the private owner is the extremest qualification, it must follow that the liability for lateral support is not within the qualification of the rule of non-liability as recognized by this court.

In the State of New York this question was first decided by the court of appeals in the case of *Radcliff's Ex'rs v. Mayor, etc., of Brooklyn*, 4 N. Y. 195, which was an action for lowering the grade of a street and thus removing the lateral support to plaintiff's lot, by reason of which the surface in its natural state fell into the excavation.    The opinion of the court was pronounced by that distinguished jurist, Chief Justice BRONSON, and after a most elaborate review of the authorities upon the subject, both English and American, the conclusion was reached that for such an injury no action would lie.    The decision was based upon two grounds: *First*, That the damages complained of were but an incident to the exercise of legislative authority, and that as such an injury was not a taking of the property of the private owner within the meaning of the constitution of the State of New York, no remedy existed; *second*, that the land of the street belongs to the corporation, and that it has a right to use it as it sees fit, and is not liable as a private owner would be for consequential damages.    In such opinion there is a full recognition of the occasional hardship of the rule, and it is evident from a reading thereof that the court gave the matter consideration from every standpoint, and without hesitation arrived at the conclusion above stated.    In *People, ex rel. Tytler, v. Green*, 64 N. Y. 606, there was a further discussion of the question, and the general rule that injuries from a change of grade by the proper authorities were *damnum absque injuria* was fully recognized.    But damages were allowed

in that case upon the ground that there had been special
legislation authorizing such damages to be recovered.    In
*Benedict v. Goit*, 3 Barb. 459, the rule afterwards laid down
in *Radcliff's Ex'rs v. Mayor*, *supra*, was fully recognized
and declared, and the doctrine was so extended as to apply
the rule to a turnpike company which under the statute had
been authorized to acquire the right of the public in the high-
way.    The case of *St. Peter v. Denison*, 58 N. Y. 416, pre-
sented the question of the liability of the public in the pros-
ecution of its work for the casting of stones and earth upon
the premises of an adjoining proprietor.    The opinion
specially recognizes the doctrine theretofore announced by
the court, and by fair inference extends the rule of non-
liability to acts of the kind for which damages were claimed
in this case; but holds that the contractor for the work in
the prosecution thereof was not an agent of the state and
therefore was not entitled to protection under the rule.
The case of *Waddell v. Mayor, etc., of New York*, 8 Barb.
95, presented substantially the same question as to the non-
liability of the city for work done upon its streets in pur-
suance of legislative authority.    The court confirms its
former rulings upon the subject, and cites with approval
the case of *Callender v. Marsh*, 1 Pick. 418.    In fact, it
is clear from the opinion in this case that it was practically
conceded by all parties that the city was not liable for any
change in the surface incident to bringing the street to the
first grade established by proper authority; the whole dis-
cussion going to the question as to whether or not it was
liable for a change from such first established grade, and it
was upon this question that the case from Massachusetts was
cited.    In the case of *Clemence v. City of Auburn*, 66 N. Y.
334, the court allowed a judgment for damages for injuries
to the plaintiff caused by an irregularity in the sidewalk to
stand, but did so upon the express ground that the side-
walk had been improperly built and not in accordance with

the direction of the proper authorities, and in thus deciding fully recognized the authority of the cases above referred to and distinguished this from them. The case of. *Cogswell v. N. Y.*, *N. H. & H. R. R. Co.*, 103 N. Y. 10 (8 N. E. Rep. 537), presented a somewhat different question, but the court in deciding the same referred with approval to the case in 4 N. Y. (*Radcliff's Ex'rs v. Mayor*, etc.), and distinguished the one at bar therefrom. In the case of *Heiser*, *Ex'r*, *v. Mayor*, etc., *of New York*, 104 N. Y. 68 (9 N. E. Rep. 866), the general doctrine of non-liability was fully recognized and reiterated.

In Massachusetts the doctrine of non-liability for such injuries as those under discussion is fully established. The first case upon the subject was that of *Callender v. Marsh*, 1 Pick. 418. This was an action for damages for lowering the grade of the street by reason of which the lateral support was taken away from plaintiff's lot and the soil thereof caused to fall or slide into the excavation. In a most exhaustive opinion, in which the question is discussed upon principle and in the light of the authorities both in England and America, the court holds that the action would not lie. The broad doctrine is announced that so long as the authorities are proceeding properly in the amending of the grade of a street, they are not liable for consequential damages, and that damages of the nature set out in the complaint in that action were consequential and therefore not actionable. The argument of the opinion seems unanswerable and shows clearly that any other rule than that thus laid down would be destructive of the rights of the public as enjoyed from the remotest time. The opinion further shows that though there may be instances where the rule will work hardship, yet that such will not be the fact as a general proposition. It holds that as a general rule those who purchase lots bordering upon streets calculate the chance of such elevations and reductions as may be re-

quired to prepare such street for use and to maintain the same in such a condition as the public exigencies may require, and that the price which may be paid for such lots is usually influenced by such considerations. And hence no injustice is done in refusing to allow compensation for acts which must be held to have been fairly contemplated at the time of such purchase. It is true that in this case a part of the claim for damages was for injuries to a building situate upon the lot, but that fact does not seem to have had any influence upon the opinion of the court, as its decision is general that for removal of lateral support plaintiff has no remedy.

The rule established by this case has continued to be the rule of decisions in said state. This is evident from several cases found in its reports. In none of them, so far as I have been able to see, was the question again directly decided, for the reason that the legislature soon after the decision of that case enacted a law which changed the rule. However, in the case of *Benjamin v. Wheeler*, 8 Gray, 409, the principle of such non-liability is fully recognized and affirmed. This was an action for injuries occasioned to the land of an abutter by acts done by direction of the surveyor of highways, in digging a water course in the highway, and throughout the whole case it is assumed rather than decided that if such surveyor was acting within the authority of the law, no liability would exist. The question mooted and directly passed upon was as to whether or not he was, in the prosecution of such work, acting within the line of his authority as a public officer. In *Brown v. City of Lowell*, 8 Metc. 172, the claim of the plaintiff was for damages occasioned by the change of the grade of the street in front of his lot, and the court decides that for his remedy he must look to the statute upon the subject, and proceeds to discuss at some length under what statute and to what extent he is protected.

In the State of Missouri the doctrine which I am contending for has always been recognized and applied by the courts. In the case of the *City of St. Louis v. Gurno, supra,* the question was fully examined by the court and the doctrine of non-liability extended so as to cover the flooding of the lot of the adjacent proprietor. That this case was carefully considered is evidenced by the opinion of the majority of the court, as well as by the fact that there was a strong dissenting opinion by one of the judges. In *Taylor v. City of St. Louis,* 14 Mo. 20, the question was again before the court, and the case above cited affirmed, and the case of *Callender v. Marsh, supra,* cited with approval. In *Lambar v. City of St. Louis,* 15 Mo. 610, the doctrine was approved and extended to the case of a ditch being dug under the authority of the city, to carry off water which otherwise would accumulate to the detriment of the city. In the case of *Hoffman v. City of St. Louis,* 15 Mo. 651, the general doctrine is announced and applied to the case of a regrade of the street. In *Schattner v. City of Kansas,* 53 Mo. 162, the court again asserts the general doctrine of non-liability for work done by authority of law, and applies it in general to the work of grading streets. The particular case was one of great individual hardship, but the court held itself unable to relieve the plaintiff. In the case of *Imler v. City of Springfield,* 55 Mo. 119, the doctrine is extended so as to hold that plaintiff could not recover when by reason of a change in the grade of the street the surface water had been cast upon his lot. In the decision of this case the court seems to have substantially gone back to the doctrine of the case of *St. Louis v. Gurno, supra*; or, at least, to only have qualified that doctrine to the extent of holding that where a stream was so dammed up as to flood the lot of an adjoining proprietor, it might be held to be a taking within the meaning of the constitu-

tion, but that such was not the case where simply the ordinary surface water was cast upon his lot.

The case seems to have so qualified the decision of the court in 51 Mo., heretofore mentioned (*Thurston v. City of St. Joseph*), as to show clearly that in deciding that case the court did not intend in any way to qualify the general rule theretofore established in the state, that for damages such as those in the case at bar the city was in no sense liable. In *Wegmann v. City of Jefferson*, 61 Mo. 55, the court announces the doctrine of non-liability as having been so well established in that state as to require no further discussion. In the case of *Broadwell v. City of Kansas*, 75 Mo. 213, the doctrine is again announced, but it is held that the actual covering of the lot of the plaintiff by the city with earth so as to deprive him of the use thereof, is a taking within the meaning of the constitution and therefore outside of the rule of non-liability.

In the State of Pennsylvania the rule has become too well established to require further adjudication. In the case of *Green v. Borough of Reading*, 9 Watts, 382, it was directly decided that the city was not liable for damages of the kind in question, unless upon an allegation and proof of malice or wanton disregard of private right in the prosecution of the work. In *O'Connor v. Pittsburgh*, 18 Pa. St. 187, the facts were that the city established a grade in a certain street. Plaintiff, acting upon such grade, constructed a church. The city then changed the grade in such a manner as to make it necessary to take down and rebuild the church. The particular hardship of the case was such that the court desired if possible to find a remedy for the plaintiff, and for that reason, as shown by the opinion, directed a re-argument. Yet, notwithstanding such wish of the court, it was forced to the conclusion, after the most elaborate consideration of the entire question, in which a large number of cases upon the subject were cited — many of which were pure lateral

support cases — that no liability was incurred by the city. *In re Ridge Street, Allegheny City*, 29 Pa. St. 391, it was decided that for the cutting down of the street consequent upon the reduction of the grade and thus depriving plaintiff of the lateral support to his lot, no action would lie.   It is true that this case presented the question of the lot burdened with a certain structure, but that fact does not seem to have impressed the court at all, and its decision is put upon the same ground as that of the cases where the question was presented of the falling of the soil in its natural state.

In the case of the *City of Pontiac v. Carter*, 32 Mich. 163, Judge COOLEY, with his usual thoroughness and wealth of knowledge and research, rendered a most elaborate opinion covering this whole subject, and therein announced the doctrine of non-liability, not only as applicable to the original grade, but as to any change thereof made in pursuance of proper authority.   He discusses the question both upon principle and in the light of authority, and specially affirms the soundness of those cases which directly announced the doctrine of non-liability for the removal of lateral support, like those of *Radcliff's Ex'rs v. Brooklyn*, and *Callender v. Marsh, supra*.   From this opinion it is clear that in Michigan this rule obtains in its fullest extent.   The case of *Buskirk v. Strickland*, 47 Mich. 389 (11 N. W. Rep. 210), has been cited as tending to show that the contrary rule prevailed in Michigan, but an examination of the opinion will show that the case may be properly enumerated among those supporting the rule; for, although it was held in that case that plaintiff could recover, it was solely upon the ground that the place in which excavation was made was not a public street.

It will only be necessary to refer to one or two cases to show that the rule in its fullest force obtains in Illinois. The case of *Murphy v. City of Chicago*, 29 Ill. 279, was

most elaborately briefed by the respective counsel, but the court contented itself with the simple statement of the principles applicable to such cases, which were that the city could do anything with its streets which was not incompatible with the ends for which the streets were established, and that if in so doing it acted with prudence it would not be liable for damages.    In the case of *Roberts v. City of Chicago*, 26 Ill. 249, the general doctrine is announced and extended to the regrade of the streets, and further, that the courts cannot interfere for the purpose of determining as to whether or not the grade adopted is the best.    The only ground which is recognized as a foundation for a liability upon the part of the city is the want of reasonable care and prudence in the prosecution of the work.

. In Indiana the rule is the same.    *Macy v. City of Indianapolis*, 17 Ind. 267, decides in general terms not only that the city is not responsible for consequential damages in grading its streets, but that it may change such grade at pleasure without incurring any liability for so doing; and to show that the consequential damages which it is talking about include those for taking away the lateral support to adjoining lots, it cites a large number of cases in support of its decision, many of which were cases where the question of lateral support was directly involved.    *City of Lafayette v. Bush*, 19 Ind. 326, decides generally that the city is not liable for consequential damages to an adjoining proprietor.   *City of Vincennes v. Richards*, 23 Ind. 381, reaffirms the general doctrine of the prior Indiana cases, and cites in support thereof, with approval, among others, the case of *Radcliff's Ex'rs v. Brooklyn*.

In Georgia the principle for which I am contending has always been the rule.   *Mayor and Council of Rome v. Omberg*, 28 Ga. 46, was an action for damages for removing the lateral support to such an extent as to cause the lot of the plaintiff in its natural state to slide into the excavation;

and the court, in most direct terms, holds that for such an act on the part of the city no action will lie. The only ground of liability, under the decision, would be that the work was done maliciously or in wanton disregard of the rights of the plaintiff. *Roll v. City Council of Augusta*, 34 Ga. 326, announces the general doctrine of non-liability very broadly, and directly approves of the case of *Mayor and Council of Rome v. Omberg*, *supra*, and extends the doctrine so as to hold that the city is not liable for permitting a railroad company to construct and use a railroad track along the street.

In *Mitchell v. Mayor and City Council of Rome*, 49 Ga. 19, the court approved the charge of the lower court that "the mayor and city council of Rome may grade down the street whenever in their judgment the public interest requires, and go even to the line of the street, but they must do their work in a skillful and careful manner so as not to unnecessarily endanger the property of contiguous land owners. If the work is thus done no liability is incurred."

In Connecticut the rule is unquestioned. In the case of the *City of New Haven v. Sargent*, 38 Conn. 50, the court fully considered the question, after elaborate argument, and held that the doctrine extended to the improvement of highways in the country and, for obvious reasons, more clearly to that of streets in cities. The case of *Skinner v. Hartford Bridge Co.*, 29 Conn. 523, though not exactly in point, fully recognizes the principle afterwards announced in the case above cited.

The case of *Benden v. Nashua*, 17 N. H. 477, shows that the rule was recognized at an early date in the State of New Hampshire. The exact point decided in this case was, that no action would lie against the city for damages arising from the raising of a highway, but the cases cited by the court show clearly that a like rule would have been applied if it had been a case of the removal of lateral support. This rule may have been qualified by subsequent

decisions in that state. One of the later cases we shall here-
after review as being among those which may be fairly
cited as against the proposition for which we are contend-
ing.

A single case from Maine will clearly show the recogni-
tion by its courts of the rule. In *Hovey v. Mayo*, 43 Me.
322, the court not only decided that without the aid of a
statute no action would lie for the removal of lateral sup-
port by the city, but further decided that the statute in
that state authorizing the recovery of damages in the case
of the alteration of the street did not apply to a change of
grade.

In Wisconsin the rule obtains to its fullest extent. In
the case of *Alexander v. City of Milwaukee*, 16 Wis. 264,
the court, after a careful consideration, arrived at the con-
clusion that for consequential injuries resulting from the
improvement of the street there was no remedy. In the
course of the decision the rule existing in Ohio is com-
mented upon, and it is said that such rule seems to be
founded upon considerations of natural justice, but that the
law is too well settled to the contrary to justify the court
in following the rule there laid down. See also *Pettigrew
v. Village of Evansville*, 25 Wis. 223, and *Wallich v. City
of Manitowoc*, 57 Wis. 9 (14 N. W. Rep. 812).

This rule has been fully recognized in many of the other
states of the union. See *Plum v. Morris Canal & Bank-
ing Co.*, 10 N. J. Eq. 256; *Methodist Episcopal Church v.
City of Wyandotte*, 31 Kan. 721 (3 Pac. Rep. 527); *Ben-
nett v. City of New Orleans*, 14 La. An. 120; *Rounds v.
Mumford*, 2 R. I. 154; *Mayor and City Council of Cum-
berland v. Willison*, 50 Md. 138; *Creal v. City of Keokuk*,
4 G. Greene, 47.

Cases might be found in nearly all the other states sup-
porting the same proposition. In fact, this rule has been

so universally recognized in the United States that until very recently a case to the contrary could not be found outside of the State of Ohio. This is apparent, not only from the investigation of the cases upon the subject by the different courts which have had the matter before them, but also from the briefs of counsel in the presentation of such cases. In some of them counsel of great learning and diligence have appeared and filed briefs, and in nearly or quite all of them it has been conceded that the rule of non-liability was universal in this country, with the single exception above stated. The contention of such counsel has been confined to attempting to show that the Ohio rule was more consonant with natural justice than the other, and that for that reason the court should follow it in the decision of the case at bar, though in so doing it would concededly be deciding against an almost universal course of decision.

At the present time the courts of but three states in the union recognize a doctrine which will support the conclusion of the majority of the court, and in two of said states the rule which now seems to prevail there is of recent adoption. In Ohio, as we have before seen, this rule was announced at an early day, but the first case in which it was so announced bears evidence of but slight consideration on the part of the court, and has been justly criticised in very many of the cases in the other states for that reason. The other cases seem to have been more fully considered, but they, to a great extent, rest themselves upon said first named case, which did not go to the full extent of some of the later cases which rely upon it as the reason for their decision.

The supreme court of Minnesota in two cases has decided generally that the public in such matters have no greater rights than private persons, but the cases are brief

and give evidence of but slight consideration. See *O'Brien v. City of St. Paul*, 25 Minn. 331; *Dyer v. City of St. Paul*, 27 Minn. 457 (8 N. W. Rep. 272).

The case of *Stearns' Ex'r v. City of Richmond, supra*, is a recent case and may well be said to now rank Virginia upon this side of the question.

I have not overlooked the case of *Eaton v. B. C. & M. R. R.*, 51 N. H. 504, but do not range that state upon the side of the Ohio rule for the reason that the question decided in that case was as to the liability of a railroad company for flooding the land of an adjoining owner, and for that reason the opinion, so far as it discussed the question at bar, was pure *dicta*. Great learning and ability are shown in such discussion and it is entitled to weight, but being *dicta* cannot be said to establish a rule for the state.

It will therefore be seen that as against the array of authorities above cited and many others that might be cited to the same effect, on the one side, there are cases from three states upon the other, and that even in these states the rule does not seem to be any too well established. Especially is this true as to Ohio, which may be said to be the father of the rule, as in the later cases from that state there has been a tendency to somewhat modify the earlier ones and to hold that for the first establishment of the grade damages could not be recovered under the same circumstances as upon a change thereof. Not only is the case law thus nearly all upon one side, but when we come to examine the views of text writers we shall find that those favoring the rule of non-liability as greatly preponderate as do the cases. Judge Cooley, in his work on Constitutional Limitations, and Judge Dillon, in his work on Municipal Corporations, with their usual ability, maintain the rule of non-liability. In fact, such seems to be the view of nearly all the text writers. The most notable exception is that of Judge Elliott, in his work upon Streets. He lays

3—5 WASH.

down directly the contrary rule from that announced by Judge Dillon. The weight of his statement is greatly lessened, however, by the fact that the citation of cases in support of the text shows conclusively that the learned author did not give the matter full consideration. He so cites five cases. Two of them — the Minnesota cases above referred to — sustain the text. The other three not only do not sustain the views expressed in the text, but may fairly be cited as directly opposed thereto. See *Richardson v. Vermont Central R. R. Co.*, 25 Vt. 465; *Buskirk v. Strickland*, 47 Mich. 389; *Transportation Co. v Chicago*, *supra*. The want of full consideration is shown not only by what he does cite, but more fully by what he does not. If full consideration had been given to the question it is not possible that the Ohio cases would have escaped the attention of the learned author. Yet not one of these cases is cited.

I think that a careful review of all that has been said by the courts and by learned authors will clearly show that an overwhelming weight of authority is in favor of the rule of non-liability. Such an examination will further show that such rule does not, in the opinion of the courts, rest entirely upon authority, but is fully consonant with correct principles applicable to the subject matter. Beside, in this state there has been full legislative recognition of the rule. If the existence of the rule had not been so recognized there would have been no occasion for the enactment of the law making cities responsible for damages occasioned by a change in the grade of its streets after the same had been once established. This legislation not only recognizes such rule, but shows an intention to leave it in full force so far as the grade first established is concerned.

In my opinion the judgment of the lower court should be affirmed.