## Richmond.

### STEARNS v. CITY OF RICHMOND.

April 7th, 1892.

1. LAND OWNERS—*Lateral support—Removal—Damages*—It is an ancient principle of the common law that every land-owner has a right to lateral support for his soil as against the adjoining soil of his neighbor; and such right exists as well against the public as against an individual; and as against either, he is entitled to damages for an injury caused as the direct result of the removal of such lateral support.

2. IDEM—*Case at bar.*—In changing the grade of a street, a city excavated to the depth of sixty feet, causing plaintiff's abutting land to cave in to such an extent as to destroy the walls of brick buildings thereon twenty feet from the street line. The fallen earth was used in a neighboring pit;

HELD:

    A taking of plaintiff's property and the resulting damages were direct and not consequential.

3. STREETS—*Dedication—Acceptance.*—Where in action against city for damages caused by changing the grade of a street, the declaration was drawn upon the idea that the street was established when the alleged wrong was committed, that is decisive so far as this case is concerned, of the question whether or not, when the street was dedicated, it was accepted by the city within a reasonable time.

4. APPELLATE PRACTICE—*Case at bar*—At the first trial of this action there was a verdict for the plaintiff for $1,000 damages. On defendant's motion, this was set aside, and plaintiff excepted. Afterwards a jury being waived, the court gave judgment for defendant. To this also plaintiff excepted, and the evidence (not the facts) is certified;

HELD:

    This court discovering error in the setting aside of the verdict, sets aside all the proceedings subsequent thereto, and enters judgment thereon. 'Acts 1889-'90, p. 90. *Mears* v. *Dexter*, 86 Va. 828.

Error to judgment of the circuit court of the city of Richmond, rendered January 22, 1891, in an action against said city, commenced by the late Franklin Stearns, and after his death revived in the name of his executor, the appellant here.

The action was brought for injuries to property abutting on Twenty-first street, caused by the grading of that street. The first count in the declaration charges that the city, in grading the street, excavated to a great depth, which left the plaintiff's land without sufficient lateral support, in consequence of which so much thereof fell into the street as to practically destroy the property.

The second count charged that when the grading was commenced, there were upon the premises two substantial brick tenements, the walls whereof were so cracked and damaged, by reason of the giving way of the soil, as to necessitate their being taken down.

Other counts charge that the damage was caused by the careless and unskillful manner in which the work was done by the city.

There was a verdict for the plaintiff for $1,000 damages, which the court, on the defendant's motion, set aside, and afterwards a jury being waived, gave final judgment for the defendant. To this judgment the plaintiff applied to this court for a writ of error, which was allowed.

*H. G. Cannon,* for plaintiff in error.

*C. V. Meredith,* for defendant in error.

LEWIS, P., delivered the opinion of the court.

The first point made by the appellant is that Twenty-first street was not an established street when the injury complained of was done, and therefore that the city was a trespasser *ab initio.* The argument is that although the street is shown on

Byrd's map of the city, made in 1742, when the city was laid off, yet there was no acceptance by the city, within a reasonable time, of the dedication, which was essential to the completeness of the dedication; or, if there was, the easement in the public has been lost by long non-user.

A sufficient answer, however, to this position is that the declaration is framed upon the theory that the street was established when the alleged wrong was committed, and that is decisive of the question, so far as the present case is concerned.

The next point is that, assuming the street to have been previously established, the damage complained of was caused by the careless and unskillful manner in which the work was done by the city. There is a charge to that effect in the declaration, but the evidence does not establish it. Indeed, the preponderance of the evidence is to the contrary.

The case, then, turns upon the question whether the damages resulting from the work are what are termed consequential merely. If they are not, then the plaintiff is entitled to recover, but not otherwise.

The general principle is admitted that a municipal corporation, acting within the scope of its powers, and with reasonable care and skill, in opening and grading its streets, is not liable to the adjoining owner, whose land is not taken, for consequential damages, in the absence of any constitutional or statutory provision on the subject.

This was the point, and the only point, decided in *Kehrer* v. *Richmond City*, 81 Va. 745, upon which case, and others of that class, the defendant relied in the court below. That was an action for an alleged injury to the plaintiff's lot, caused by elevating the grade of the street upon which the lot fronted. But as the damage consisted merely in elevating the grade of the street, without any encroachment upon, or physical invasion of, the plaintiff's premises, it was held that the damage was consequential, and the action not maintainable. It was said, however, in the course of the opinion, that if the ground of

complaint had been that earth had been thrown from the street on the plaintiff's land, he would have had a good cause of action for that, just as where one's land is overflowed and damaged by the erection of a dam in a river, as in the leading case of *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, where the damage was held to be a *taking* of private property, within the meaning of the constitution.

This is on the principle that the owner is entitled to the exclusive possession and unmolested enjoyment of his property, and that the public authorities have no more right to trespass upon it than has a private individual.

In the present case there is no dispute as to the disastrous effect upon the plaintiff's property of the improvement in question. It has, in fact, been almost totally destroyed. Being left without sufficient lateral support, in consequence of an excavation sixty feet in depth, the soil in large quantities gave away and fell into the street below; the buildings on the lot, erected at a cost of several thousand dollars, were cracked and damaged, and had to be taken down to prevent their falling also; and the earth that fell was actually appropriated and used by the city for the construction of another thoroughfare, called Church Hill avenue, near by. It appears, moreover, that the building nearest the street was not within twenty feet of the street line.

Can it be doubted, then, that the plaintiff's property has been *taken* by the public, if the constitution means anything? It would be a strange construction of that instrument to hold that it does not apply to such a case.

It is an ancient principle of the common law that every land-owner has the right to lateral support for his soil in the adjoining land of his neighbor. This, indeed, is a natural right, analogous to the flow of a natural river or of air. It is not an easement, but is incident to the land itself, and is therefore *property.* "It seems," says Rolle, "that a man who has

land next adjoining to my land, cannot dig his land so near to my land that thereby my land shall fall into the pit, and for this, if an action were brought, it would lie." 2 Rolle, Abr. 565.

The same principle was recognized in *Tunstall* v. *Christian*, 80 Va. 1, and, indeed, has been universally recognized, both in England and America. In *Gilmore* v. *Driscoll*, 122 Mass. 199, it was well expressed by Gray, C. J., who said :

" Every owner of land is entitled, as against his neighbor, to have the earth stand and the water flow in its natural condition. * * * In the case of land, which is fixed in its place, each owner has the absolute right to have his land remain in its natural condition, unaffected by any act of his neighbor; and if the neighbor digs upon or improves his own land so as to injure this right, an action may be maintained against him, without proof of negligence."

And although this natural right does not extend to buildings increasing the downward and lateral pressure, and, therefore, if damage is done to them by digging in the adjoining soil, no action can be maintained therefor, unless negligence be proved, yet it is settled by the recent decisions in England, and it would seem clear upon principle, that when land upon which there are buildings slides or subsides by reason of such digging, and the buildings are in consequence damaged also, and their weight in no way contributed to the result, then the damage done to the buildings may be taken into consideration in estimating the damages. This was decided in the court of Exchequer, in *Brown* v. *Robins*, 4 Hurl. & N. 186, and reaffirmed in *Stroyan* v. *Knowles*, 6 *Id.* 454.

It is denied, however, that this right of lateral support exists as against the public; that is, in the soil of a street. But why shouldn't it? If there be any principle for holding that it does not, we are not aware of it, although there may be some authorities in accordance with the defendant's view.

The case of *City of Quincy* v. *Jones*, 76 Ill. 231, has been cited, but that case, in fact, supports the view we have expressed. The points actually decided were (1) that the natural right of lateral support is confined to the soil merely, and that in Illinois the right to support for buildings cannot be acquired, as against a municipal corporation, by prescription. The court, however, took occasion to repeat what it had previously said in *Nevins* v. *Peoria*, 41 Ill. 507, namely, that a city having authority to grade its streets has no more power over them than a private individual has over his land, and that it cannot, under the spacious plea of public convenience, be permitted to exercise that dominion to the injury of another's property, in a mode that would render a private individual responsible in damages, without being responsible itself. In other words, the principle was recognized that the rights and liabilities of a city, with respect to the adjoining owner, are to be governed by the law of adjoining proprietors.

This was the principle of the decision in *Dyer* v. *St. Paul*, 27 Minn. 457, where it was expressly decided that an abutting owner is entitled to the lateral support of the adjoining land in a public street, and that the city is liable for damage to such owner's land occasioned by removing such lateral support in grading the street.

The same principle was recognized in *Transportation Co.* v. *Chicago*, 99 U. S. 635, although it was held that the plaintiff was not entitled to recover in that case for the sinking of his soil and the consequent cracking of the walls of his buildings, because the damage was due to the superincumbent weight of the buildings.

It would be a curious doctrine to hold that the authorities of a city cannot go upon one's property without his consent, and remove even so much as a shovel-full of earth, without rendering the city responsible for a trespass, and yet that they may, by excavating in the street, bring down his soil and

buildings with impunity, no matter what their value may be, provided the work is not done carelessly or negligently. This can hardly be law, for it is neither common sense or natural justice. As was remarked by Mr. Justice Miller in *Pumpelly* v. *Green Bay Co., supra,* the decisions of the courts on the subject of consequential damages have gone to "the uttermost limit of sound judicial construction," and we are unwilling in a case like this, as the Supreme Court was in that case, to say that the public may subject private property to total destruction without making compensation, because, in the narrowest sense of the term, it has not been *taken* for the public use.

As to the right of the abutting owner to the support of his soil in that of the street, the following extract from a recent work on the law of eminent domain, is worthy of reproduction. The author says :

"When the public takes land for a street *in invitum,* why should they be held to have acquired by implication something which they did not ask for? Why should a grant or dedication of land to the public, for a particular use, be held to have vested in the public more than a grant of the same land, for the same use, to an individual, would vest in him? The use of the land for a street does not necessarily require that these rights of support, etc., should be in the public. It is always possible and practicable to improve a street without interfering with such rights. It is vastly more for the public interest that the public should occasionally incur increased expense in making improvements, to avoid interfering with such rights, than that the public should in all cases be compelled to pay for the loss of such rights when a street is established."

And in treating of what constitutes a taking, the same author further says :

"If, in the execution of public works under authority of law, excavations are made and the soil of an individual gives

way in consequence of being deprived of its lateral support, there is a *taking* to the extent of such deprivation, and the individual is entitled to compensation for the resulting damage. The right of lateral support is a part of his property in the land, as much so as his right of user, or of exclusion. When he is deprived of it his property is taken just as much as if his property was invaded." Lewis, Em. Dom., secs. 100, 151.

Concurring, as we do, in these views, it follows that the damages complained of are not consequential, but direct, and that the plaintiff is entitled to recover in this action. The question, however, arises, what is the proper disposition to make of the case?

At the first trial there was a verdict for the plaintiff for $1,000 damages, which, on motion of the defendant, was set aside, to which action of the court the plaintiff excepted, and, afterwards, a jury being waived, judgment was given for the defendant. The plaintiff also excepted to this action of the court, and the evidence (not the facts) is certified. In such a case the act of assembly, approved February 7th, 1890, amending section 3484 of the Code, requires the appellate court to look first to the proceedings on the first trial, and if it discovers that the court erred in setting aside the verdict on that trial, then to set aside all the proceedings subsequent to the verdict, and enter judgment thereon. Acts 1889–'90, p. 36; Acts 1891–'92, p. 962; *Mears* v *Dexter*, 86 Va. 828.

There was no objection to the verdict by the plaintiff, on the ground that the damages awarded were too small, or on any other ground. On the contrary, he excepted to the setting aside of the verdict, and that was a waiver of his previous exception, taken during the progress of the trial, to the refusal of the court to give to the jury the instructions offered by him. *Western Union Telegraph Co.* v. *Virginia Paper Co.*, 87 Va. 418.

We must, therefore, in obedience to the statute, set aside all the proceedings subsequent to the verdict, and enter a judgment on that for the plaintiff, *i. e.* for $1,000 with interest and costs, which, in view of the circumstances, is certainly a very moderate recovery.

JUDGMENT REVERSED.