CITY OF WAUKESHA, Appellant, vs. RANDLES and another, Respondents.

*January 14—February 2, 1904.*

*Municipal corporations: Streets and sidewalks: Improvements: Abutting owners: Parties to proceedings: Statutes: Construction.*

1. Sec. 925—175, Stats. 1898, of the general charter law, gives cities the power to improve streets, and subch. XIX (secs. 925—201 to 925—207, Stats. 1898), provides how, in the construction

Waukesha v. Randles, 120 Wis. 470.

and maintenance of sidewalks, these powers shall be exercised, and that the expense of every original construction and relaying of sidewalks is chargeable upon the lots abutting upon the improved part of the streets. *Held:*

(1) That such liability on the part of the lot owner makes him an interested party to the proceedings resulting in such improvements, and vests him with the right to insist that the course of action prescribed be followed by the representatives of the city in executing and carrying out such improvements.

(2) That the city is limited to the course therein prescribed, in constructing, maintaining, and improving sidewalks, and is liable for injuries resulting from illegal proceedings.

2. Sec. 925—204, Stats. 1898, as amended by ch. 173, Laws of 1899, provides that it shall be the duty of the owner of every lot, abutting upon an improved street or a street ordered to be improved, whereon the grading for a sidewalk has been done for ten days or more, to lay at his own expense a standard sidewalk in front of the same, etc., and that whenever the board of public works shall declare any sidewalk unsafe, defective or insufficient, and require the same to be removed and replaced with a new sidewalk, it shall be the duty of the abutting lot owner to lay a standard sidewalk within three days after service of the order made by the board of public works requiring the removal and relaying of the sidewalk. It appeared, among other things, that on July 15 the board of public works of the plaintiff city, by resolution, condemned defendants' sidewalk as insufficient and unsafe, and ordered grading and relaying of the same; that on August 5 the permanent improvement of the street in front of defendants' premises was ordered; that on August 20 defendants were served with the order of July 15 and notice to grade the street and rebuild a standard tar sidewalk on the established grade, in place of the former one, within three days, and that, on defendants' refusal to comply with such order and notice, the board on August 25, let the contract for the building of the sidewalk, but defendants prevented the contractor from carrying it out. It further appeared that the city officials had done nothing to grade the street under the order of August 5, and that they contemplated extensive grading of the sidewalk portion of the street—filling to the depth of five or six feet, and cutting down to a depth of about two feet—to make it conform to the established grade. *Held:*

(1) That the building of such sidewalk was an improvement permanent in its nature and not a repair for temporary use until the contemplated permanent improvement be executed.

(2) That defendants could not be required to do the work prescribed by the order of July 15, under the statutory provisions authorizing the rebuilding of an insufficient and defective walk.

(3) That defendants had the right to insist that the grading for the sidewalk should be considered part of the permanent improvement of the street, and let by contract with the other work on such street, and that the expense thereof be borne in all respects like that of improving the streets.

(4) That defendants were entitled to have ten days after such grading was completed in which to lay the sidewalk at their own expense.

(5) That the action of the city officials in undertaking to grade for and lay such sidewalk was illegal.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge.  *Affirmed.*

Appellant is a city of the fourth class under the general charter law.  This action was brought to restrain the respondents from forcibly interfering with and preventing the city's officers and servants from grading and rebuilding sidewalks in front of respondents' lots on portions of Hartwell and Arcadian avenues.  It is admitted that respondents own lots abutting on the avenues, as alleged in the complaint; that the board of public works, July 15, 1902, passed a resolution declaring the sidewalks on the streets in front of respondents' property to be out of repair and defective, and ordered grading and relaying of the sidewalk; and that notice of the order was served on respondents on August 20, 1902.  The order and the notice required them to grade the streets and rebuild the walks on these streets within three days after service of the notice and order, according to the requirements and specifications therein prescribed.  Respondents refused and neglected to comply with the notice and order, whereupon the board of public works contracted, August 20, 1902, with Herman Wilkie, to make such improvements, and he began the grading, preparatory to rebuilding the sidewalk, in compliance with the specifications and order

and under the direction of the board of public works. The improvement ordered required grading of the streets for the sidewalk and necessitated filling in and cutting down different portions of the streets to accomplish the improvements in question. These streets had never been graded to conform to the established grades. Hartwell avenue had not been ordered improved before the service of this order and notice on respondents. The fact stands conceded in the record that the city on August 5, 1902, had ordered Arcadian avenue to be permanently improved. It appears that the avenue required grading before laying the sidewalk in connection with the permanent improvement so ordered, and that nothing had been done in this respect. The improvement undertaken at the time in question did not constitute a part of this permanent improvement of the street, but was designed merely to replace and repair a defective and insufficient walk, and for these purposes the officers and employees entered upon and began grading parts of respondents' lots abutting Arcadian avenue. The contract under which the work was to be executed was let without advertising for proposals and bids in the official city paper. Upon the facts established, judgment was awarded dismissing the complaint and for costs. From this judgment the city appeals.

*Henry Lockney,* for the appellant.

*D. J. Hemlock,* for respondents.

SIEBECKER, J. The city commenced this action to restrain respondents from forcible and violent interference with the officers and employees of the city in making an improvement of that portion of the streets which pass over the property of respondents. From the foregoing statement of facts, it appears that the city officers and those acting under their direction began to rebuild a sidewalk in front of respondents' premises, and that respondent *J. M. Randles* forcibly obstructed them, destroying material and imple-

ments, and threatening personal violence to those engaged in executing the orders of the city. It is asserted in behalf of the city that its officers and others acting for it were lawfully engaged in grading the streets for rebuilding the sidewalk in front of respondents' premises, under the authority granted by sec. 925—204, Stats. 1898, as amended by ch. 173, Laws of 1899. It is therein provided:

"It shall be the duty of the owner of every lot or parcel of land, abutting upon an improved street or a street ordered to be improved, whereon the grading for a sidewalk has been done for ten days or more, to lay at his own expense, a standard sidewalk in front of the same, or one as good as the standard, to be approved by the board of public works."

It further provides:

"Whenever the board of public works shall have declared any sidewalk, or part thereof unsafe, defective, or insufficient and required the same to be removed and replaced with a new sidewalk," it shall be the duty of the abutting lot owner to lay a standard sidewalk, or one as good as standard, within three days after service of the order made by the board of public works requiring the removal and relaying of the sidewalk.

The succeeding section authorizes the board of public works to build and lay sidewalks whenever the lot owner shall fail to comply with the requirements of the preceding section, and the expense thereof shall be assessed upon the abutting lots and collected like other city taxes upon real estate It is argued that the city had the right to require respondents to rebuild this walk, on account of its insufficiency and want of repair, after having ordered Arcadian avenue permanently improved. Sec. 925—175, subch. XVIII, Stats. 1898, of the general charter law, gives cities the power to improve streets in the manner therein prescribed. Subch. XIX (secs. 925—201 to 925—207), of the same law provides how, in the construction and maintenance of sidewalks, these powers and duties shall be exercised by the city.

This chapter provides a scheme and method which must be followed in dealing with this class of city improvements. The city's powers are fixed by those grants, and it must follow them as thereby granted. Under these provisions, the expense of every original construction and relaying of walks is chargeable upon the lots abutting on the improved part of the street. This liability on the part of the lot owner makes him an interested party to the proceedings, and vests him with the right to insist that the course of action prescribed be followed by the representatives of the city in executing and carrying out such improvements. These provisions limit and restrict the city to the course prescribed, in constructing, maintaining, and improving sidewalks; and any departure therefrom invalidates its action, and makes the city liable for injuries resulting from the illegal proceedings. This rule was established and has been adhered to since the decision in *Crossett v. Janesville,* 28 Wis. 420. *Dore v. Milwaukee,* 42 Wis. 108; *Hall v. Chippewa Falls,* 47 Wis. 267, 2 N. W. 279; *Addy v. Janesville,* 70 Wis. 401, 35 N. W. 931; *Drummond v. Eau Claire,* 79 Wis. 97, 48 N. W. 244; Id., 85 Wis. 556, 55 N. W. 1028; *Jorgenson v. Superior,* 111 Wis. 561, 87 N. W. 565.

The general powers conferred by sec. 925—125, Stats. 1898, to improve streets by maintaining sidewalks, are therefore restricted and limited so as to harmonize with the provisions of subch. XIX (secs. 925—201 to 925—207), providing how they shall be executed and carried out. *Crossett v. Janesville, supra; Drummond v. Eau Claire, supra; Jorgenson v. Superior, supra.*

Were the city officers, and those acting under them, acting within the law, when they attempted to grade and build a sidewalk on Arcadian avenue in front of respondents' property? They seek to justify their acts under the order of the board of public works. It appears this board, by order, condemned the sidewalk as insufficient and unsafe on July 15,

1902; that the permanent improvement of the street was or-
·dered on August 5th following; that respondents were served
·on August 20th with the order of July 15th, and with notice
to grade the street and rebuild a standard tar sidewalk on the
·established grade in place of the former one within three
·days, which they refused to do.  On August 25th the board
·of public works let the contract for the improvement to Her-
man Wilkie, who undertook to carry it out on the following
·day, but was prevented by respondents.  It appears that the
·city officers had done nothing to grade the street under the
order of August 5th for the permanent improvement of Ar-
·cadian avenue, and that they contemplated extensive grad-
ing of the sidewalk portion of this street to make it conform
to the established grade, and build a standard tar sidewalk;
that the grading required filling to the depth of from five to
·six feet, and cutting down to a depth of about two feet.
From these facts the inference is irresistible that these im-
provements were extensive and permanent in nature, and
must have been designed to conform to the general improve-
ment of the street under the order of August 5th.  Any other
inference would lead to the unjustifiable result of imposing
the heavy and burdensome expense on respondents of an
improvement permanent in nature under the claim that it is
:a repair of the sidewalk for temporary use until the con-
templated permanent improvement be executed.  In the
light of these facts, it must be held that respondents could
not be required to do the grading and build the walk pre-
scribed by the order of July 15th by the board of public
works under the provisions authorizing the rebuilding of an
insufficient and defective walk, for it must be deemed a part
·of the permanent improvement of the street.  This gave re-
·spondents the right to insist that the grading of the sidewalk
should be so considered, and be let by contract with the other
work on such street, and that the expense thereof should be
provided for and borne in all respects like that of improving

the street, and that they have ten days or more after such grading be completed to lay a standard sidewalk at their own expense. It must follow that the action of the city officers, and those under their direction, undertaking to grade the sidewalk and lay a standard tar walk, is illegal. Being illegal, they cannot appeal to a court of equity to aid them in executing the unauthorized proceedings of the board of public works.

*By the Court.*—The judgment is affirmed.