Damkoehler, Appellant, vs. City of Milwaukee,
Respondent.

*October 22, 1904—February 21, 1905.*

*Municipal corporations: Street improvements: What are "abutting
lots:" Rights of nonabutting owners: Negligence in doing work:
Removal of lateral support.*

1. In sec. 2, ch. VII, of the Milwaukee city charter—sec. 5, ch. 388,
   Laws of 1889—(providing that the grading, etc., of any street
   "shall be chargeable to and payable by the lots fronting or
   abutting upon such street," etc.), the phrase "lots fronting or
   abutting upon such street" includes only the property which
   borders on the street being improved.
2. Thus, the owner of land between which and the street in ques
   tion there is a strip 5.8 feet wide, being part of the same lot
   but owned by another person, is not chargeable with any part
   of the cost of improving such street, and, not being a party to
   the improvement proceedings, cannot rely upon any defect or
   irregularity therein as a ground for the recovery of damages
   for injury to his premises resulting from the doing of the work.
   The nonabutting owner does not have the same right of action,
   in such a case, as that which, *under the statute,* accrues to the
   abutting owner.

3. But where in such a case, through negligence of the city authorities in doing the grading, the street was excavated to such a depth that the intervening strip and also a part of the land of the nonabutting owner subsided and fell into the street, there was, in effect, a taking of said owner's property for public use, and the city is liable to him for the injury directly resulting from such unlawful invasion of his premises.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is an action to recover damages for injury to plaintiff's property, resulting from the acts of the city of *Milwaukee* in grading Hadley street, a public street of the city. The premises in question are described as the east 112.50 feet of lot 6 and lot 7 in block 8 in Wechselberg & Elliott's Subdivision of Lots C and D in the Thirteenth Ward of the city of Milwaukee, except the north 5.80 feet thereof, which part borders on the south limits or line of Hadley street, and lies between this street and plaintiff's premises. The premises front on Island avenue, a public street of the city, which intersects Hadley street at right angles, runs north and south, and lies to the east of plaintiff's property. Plaintiff became owner of the premises in 1895, and has owned them ever since.

The city graded Hadley street in 1894 and 1895, and it is claimed that such grading was unlawfully done and without authority of law. The grading is alleged to have injured plaintiff's property through the unlawful digging up, excavating, removing, and carrying away of the earth from this street to a depth of from eight to twenty feet in parts of the street adjacent to these premises, and it is alleged that this grading, excavating, and removing of the earth from the street removed the natural banks and lateral support of lot 6, and caused the 5.80 feet strip and a large portion of plaintiff's part of lot 6, above described, to subside and slide into the excavated street, to plaintiff's injury and damage. The grading causing this result is alleged to have been negligently and carelessly done

by the city, through its authorized officers and agents. The grading and excavating was done to change the natural surface of the street and bring it to the grade which had been established by the city council. It did not involve the change of any former grade in the street. It appears that the work was done under a proceeding by the city to improve Hadley street, pursuant to the authority vested by charter in the city for the improvement of streets, and to charge the cost of such improvement upon the abutting real estate.

The action was tried before the court. No bill of exceptions is certified to this court. It appears from the record before us that at the conclusion of the testimony the court decided that the attempted proceeding by the city for the improvement of this street at the expense of the abutting owners was defective and void, but that it was not a defect going to a want of authority to make the improvement and charge plaintiff's premises for a proportionate share of the cost, and that the defect in proceeding was curable under the provision of a reassessment law. Thereupon the court ordered that the city proceed to make such reassessment under the law which authorizes reassessments of benefits and damages in cases of such attempted street improvements, and stayed all further proceedings until otherwise ordered.

The fact that plaintiff's premises do not abut on Hadley street is not controverted. The court entered an interlocutory judgment, upon findings as above indicated, staying all proceedings, and allowing the city the right of reassessment of benefits and damages under the proceeding instituted for the improvement of the streets. This is an appeal from such judgment. The decision on the motion for a new trial was held in abeyance by the court, as not necessarily to be determined at this stage of the action.

For the appellant there was a brief by *Hamilton, Van Wyck & Silber,* and oral argument by *C. H. Hamilton* and *Howard Van Wyck.*

For the respondent there was a brief by *Carl Runge,* city attorney, and *R. S. Witte,* assistant city attorney, of counsel, and oral argument by *Mr. Witte.*

The following opinion was filed December 13, 1904:

SIEBECKER, J.   It is an uncontroverted fact upon the record before us that plaintiff's premises do not front or abut upon Hadley street.   A strip of land 5.80 feet in width lies between Hadley street and the portion of lot 6 owned by the plaintiff.   This situation of her premises leaves them removed from the southerly margin of Hadley street by the width of this strip.   The defendant's charter (sec. 2, ch. VII) provides that "grading, graveling, and planking, macadamizing, or paving to the center of any street or alley . . . shall be chargeable to and payable by the lots fronting or abutting upon such street [or] alley, . . . to the amount which . . . [it] . . . shall be adjudged . . . to benefit such lots."   The city sought to charge upon plaintiff's premises, as an abutting owner, a proportionate share of the cost of this improvement, under the power conferred by this section of its charter.   Is plaintiff such an owner under these provisions?   An examination of these provisions and those on kindred subjects in the charter leads us to the opinion that it was intended to include within the phrase "lots fronting or abutting upon such street [or] alley" only the property which borders on the street or alley being improved.   *Jenkins v. Rock Co.* 15 Wis. 11; 1 Am. & Eng. Ency. of Law (2d ed.) 224.   Since plaintiff's premises did not border on Hadley street, no liability could attach to charge her premises with part of the expense. Under these circumstances she was not an interested party to the proceeding for the improvement of this street and the payment of its cost by abutting owners, and she therefore cannot rely on any defect or irregularity in the proceeding as a ground for the recovery of damages for injury to her premises.   The liability of abutting owners for a proportionate

share of the cost of such improvements gives them the right to insist on compliance with the provisions of the charter to which the city is restricted in making them. A failure on the part of a city to follow the prescribed course of procedure for the exercise of this power is deemed a violation of the abutting owner's statutory right, and constitutes a legal ground for the recovery of damages resulting from the unauthorized acts of the city. This has been repeatedly ruled in cases before this court, cited in the recent case of *Waukesha v. Randles,* 120 Wis. 470, 98 N. W. 237. Since no cause of action can arise in plaintiff's favor on account of any failure by the city to comply with these charter provisions, any discussion of the subject of a reassessment under the statutes in cases of this nature is unnecessary. They obviously cannot apply, for plaintiff's property is not within the assessing district of this improvement.

It is argued that, if plaintiff has no cause of action upon this ground, she has a cause of action at common law for damages caused by the negligent and wrongful conduct of the city's officers and agents in grading and excavating the street. She avers that the grading, excavating, and removing of the material from that part of Hadley street bordering on the strip of lot 6 lying between her premises and this street was carelessly and negligently done by removing the earth within the street, which laterally supported the border strip of lot 6, to the depth of from fifteen to twenty feet, causing this strip and the plaintiff's premises adjoining it to subside and fall into the excavated street, and undermine the foundations of her house to an extent which necessitated its removal to prevent its destruction by falling. It is asserted that this conduct by the city's representatives was an unlawful invasion of her property rights, and resulted in a taking of her property for public use, for which compensation should be made.

In respect to the rights of adjoining proprietors, the laying out of streets and the opening and preparing of them for

public use and travel are municipal functions, within the corporate duties of municipalities, as distinguished from their purely public or governmental duties, imposed on them as agents of the government. In the performance of these corporate duties a city is held responsible for the consequences of any unlawful acts of its officers and agents, while no liability attaches "for torts committed by its officers in the discharge of merely public or governmental duties." This distinction in responsibility has not always been observed in the cases cited to our attention as ruling this case under the conflicting contentions of the parties. There is no conflict in the adjudications in this court upon the proposition that the careless and negligent discharge of a corporate duty by the city's officers and agents renders it liable for the proximate damages resulting therefrom. In the recent case of *Bunker v. Hudson,* 122 Wis. 43, 99 N. W. 448, the cases are collected and cited to this doctrine. See, also, *Durkee v. Kenosha,* 59 Wis. 123, 17 N. W. 677. Other cases brought to our attention are of the class holding that municipalities are not liable for consequential damages resulting to property from raising or lowering the grade of a street, and that such grading is not a taking of private property for public use, within the meaning of the constitution, if the municipality act under authority of law in making the change of grade, and exercise due care, unless so made by some statute or constitutional provision. This doctrine was examined, and the former cases in this court upon the question affirmed, in *Smith v. Eau Claire,* 78 Wis. 457, 47 N. W. 830, and *Colclough v. Milwaukee,* 92 Wis. 182, 65 N. W. 1039.

It is contended by respondent that this case comes within the principle as ruled in *Alexander v. Milwaukee,* 16 Wis. 247. The *Alexander Case,* however, differs widely in its facts from this one. That was an action to recover the damages resulting from the action of the water which it was alleged was driven onto complainant's premises by the winds

through a channel cut by the city from Lake Michigan to the Milwaukee river, which bordered on complainant's land. In passing opinion on this case the court says:

"The case presents the simple question whether appellant can recover for such consequential damages thus resulting to his property from the city making the harbor improvement, a work it was specially authorized to do, and done without any negligence and in a proper manner."

It was held that no part of the premises, under the facts of the case, was taken for public use, and that no grounds of liability existed; but the court expressly declares that it does not wish "to be understood as asserting the doctrine that there must be an actual taking or appropriation of the property itself in order to entitle the owner to compensation for damages done him. The city might so build a bridge, or open a street, or excavate a canal along or upon a lot, only appropriating a small portion of it, or perhaps none of the land itself, and yet entirely destroy the value of the property for all purposes." The instant case, in its facts, comes within the exception so distinguished by the court, and cannot be held to be ruled by the decision of that case.

As appears from the statement of facts, the defendant city did excavate Hadley street to the depth of from fifteen to twenty feet adjacent to plaintiff's premises, and this caused a considerable part of her land to subside and fall into the street. A municipality has the undoubted right to improve and grade its streets by filling up or excavating the natural surface of the ground within the street limits, but the exercise of this right is subject to the qualification that in the performance of this duty it cause no unnecessary damage to an adjoining landowner, resulting from a want of ordinary care in making the improvement, or from a physical invasion of such owner's property, thereby depriving him of it and devoting it to the public use. The removal of the lateral support of the soil of premises bordering on the limits of a high-

way, in making highway improvements, to the extent of caus-
ing a substantial part of the adjoining owner's land to sub-
side and fall so as to injure the premises so affected, is an
actual appropriation of the soil to the extent of such injury,
and amounts to a taking of it for public purposes. Such con-
duct of a municipality is, in effect, an actual taking of prop-
erty, resulting from an invasion of private property rights.
We perceive no valid reason for exempting municipalities
from responsibility for invasions of this kind when perform-
ing their proprietary functions and duties. The right of a
landowner to have his property protected against an excava-
tion which will cause it to subside is a part of his property
in the land, alike in nature and importance to the right of
user or of exclusion, and a deprivation of the right is a tak-
ing of property as much as an actual appropriation of the
soil.

Viewing the case in the light of plaintiff's rights and the
corresponding responsibilities of the city, it must follow that
the acts of the city were a violation of her right by a physical
invasion of her premises outside the limits of the street, and
the injury suffered by her was the direct result of these un-
lawful acts, for which the city is liable in its corporate ca-
pacity. This result is in accord with the cases of *Pettigrew
v. Evansville,* 25 Wis. 223, and *Bunker v. Hudson,* 122 Wis.
43, 99 N. W. 448. In the former case the city was held liable
for invading plaintiff's rights by causing the water collected
in the street to be conducted onto his premises, as amounting
to a taking of private property for public use. In the latter
case the city invaded the property of plaintiffs by placing
earth on the land bordering on the limits of the highway in
constructing an embankment for the improvement of the
street. In passing opinion on the question of the city's lia-
bility under the circumstances it is said: "It is difficult to
conceive a plainer case for corporate liability. In grading
the street the city was doing one of the things which, as a

municipal corporation, it was authorized to do.  That work was done in an improper and negligent manner, so as to invade the right of the plaintiffs, not as members of the public, but as adjoining proprietors.  For proximate damages thus caused liability results according to principle, and without conflict of authority."  Cases in other jurisdictions supporting this view are *O'Brien v. St. Paul,* 25 Minn. 331; Elliott, Roads & S. § 495; *Schroeder v. Joliet,* 189 Ill. 48, 59 N. E. 550; *Stearns v. Richmond,* 88 Va. 992, 14 S. E. 847.

Our attention is directed to the fact that the case of *Radcliff's Ex'rs v. Mayor,* 4 N. Y. 195, has been referred to and approved by this court in its decisions, and that the doctrine of that case is in conflict with the rule holding the defendant liable in this case.  True, the case is referred to and approved as supporting the decisions of the cases wherein it is cited, but these cases do not conflict with the principle applied to the instant case.  In so far as the *Radcliff Case* enunciates any rule in conflict therewith, it must be disregarded and disapproved.  We are not unmindful that other jurisdictions hold that damages resulting from landslides caused by excavations on highways in the course of improving them for public use are purely consequential, and not recoverable by the owner.  We find the doctrine of liability under such circumstances more consonant with reason and justice, and therefore follow it in this case.

The court submitted two questions in the special verdict, finding, in effect, that plaintiff was the assignee of the cause of action sued on, and assessing her damages at the sum of $687.50.  After verdict and before judgment defendant moved to set aside the verdict and for a new trial, and also asked that further proceedings in the action be stayed and a reassessment be ordered.  The court ordered a reassessment, directed the entry of an interlocutory judgment, and stayed all proceedings in court, and held in abeyance the motions to set aside the verdict and for a new trial.  Since the judgment

appealed from must be reversed upon the grounds stated in the opinion, it follows that the case must be remanded with directions that the order directing reassessment be vacated, and that the court proceed to pass upon the motion for a new trial.

*By the Court.*—It is so ordered.

Upon a motion for a rehearing there was a brief for the respondent by *Carl Runge,* city attorney, and *R. S. Witte,* assistant city attorney, and a brief for the appellant by *C. H. Hamilton.*

The motion was denied February 21, 1905.

KERWIN, J., took no part in the decision of this case.