TALCOTT BROTHERS, Apellees, ᴠ. CITY OF DES MOINES, ET AL., Appellants.

**Grading of streets:** CONSEQUENTIAL INJURY: DAMAGES: LATERAL SUPPORT. A city, in bringing to grade a street in which it owns the fee, may excavate in front of abutting property to an ex-

tent that soil thereof loosens and slides into the street, thus requiring the owner to construct a retaining wall, without incurring liability for such consequential injury on the theory that it is a taking of private property without compensation; nor does the doctrine of lateral support as applied in cases arising between individuals have any application.

WEAVER, J., dissenting.

*Appeal from Polk District Court.*— HON. W. H. McHENRY, Judge.

TUESDAY, OCTOBER 23, 1906.

Rehearing denied Thursday, April 11, 1907

ACTION to recover damages for an invasion upon and injury to real estate. Plaintiffs are the owners of certain lots abutting on what is known as " State Street," in the defendant city. They allege that long prior to the matters complained of they had improved their said property, and this was done with reference to and in conformity with the natural surface of said street. Among other things, it is then alleged that in the year 1901 the city, by its officers and agents, entered upon said street and proceeded to make municipal improvements, and that in connection therewith, and particularly in front of plaintiffs' lots, the street was caused to be excavated up to the lot line to the depth of several feet. And plaintiffs say that their property was thereby invaded, injured, and damaged, in that, the lateral support to the soil having been removed, such soil for some distance on the surface back from the lot line became loose and slid down into the street, and that, in addition to the injury to the property arising directly therefrom, the expense of a retaining wall was made necessary. The pleading presents the conclusion that the acts of the city so had and done constituted a taking of their property without compensation being made therefor within the meaning of the Constitution of this State and of the United States. Re-

covery is asked on account of the diminution in the sale and rental value of the property, and for the expense of building a wall.   The answer of defendant makes admission of the street excavation, but it is alleged that the work was done under proceedings authorized by statute, and was in all respects proper and legal; the object being to bring the surface thereof to the level of the grade regularly established for said street, and to permanently improve the same.   The damage alleged by plaintiffs is accordingly denied.   It is also denied that there was any violation of the constitutional provision invoked.   To the answer a demurrer was interposed.   The first six grounds thereof have relation to matters of allegation found in the answer concerning the title of the city to the fee of the street, and to the ordinances and proceedings under which the improvements in question were being proceeded with.   As to all such grounds, the demurrer was overruled.   The remaining grounds were as follows:   " (7) It appears that in excavating the street there was removed the natural support of the adjacent soil to which plaintiffs were entitled of right, and the city thereby became liable for all damages to plaintiff's property thus occasioned.   (8) It appears that by reason of the acts of defendant alleged the soil of plaintiff's property as the same was left by excavation was thereby caused to crumble and slide into the street, and there was accordingly a physical invasion of plaintiff's property and a taking thereof without making due compensation as provided by the Constitution."   Upon these grounds the demurrer was sustained.   From the ruling so far as adverse, the defendant city appeals.— *Reversed.*

*W. H. Bremner, M. H. Cohen,* and *R. B. Alberson,* for appellants.

*George H. Lewis,* for appellees.

BISHOP, J.— I.   There has come to us with the record in the case what are denominated " briefs " and " arguments " addressed to a cross-appeal by the plaintiffs.   The

record does not show that any such appeal was taken.    Since
the submission of the case, there has been filed with the clerk
a statement on the part of the attorneys for the city to the
effect that a timely and legal notice of cross-appeal was served
upon them, but that, in preparing the record for this court,
they failed by oversight to include the same in such record.
If this method of record presentation could be approved,
still it must be said that there is nothing before us to indicate
that any such notice was served upon the clerk of the court
below.    This was essential to the appeal.    Following the
statute, and under our repeated holdings, we are without
jurisdiction to entertain the cross-appeal.    Code, section
4114; *Names v. Names,* 74 Iowa, 213; *Plummer v. Bank,*
74 Iowa, 731; *Clayton v. Sievertsen,* 115 Iowa, 687.

II.    The constitutional provision invoked by plaintiff
— section 18 of the Bill of Rights — declares that private
property shall not be taken for public use without just com-
pensation first being made.    And it will be observed that
the precise ground of the ruling of the trial court complained
of was that on the facts alleged, of which the answer made
admission, a case of wrongful taking of private property
within the meaning of the Constitution was made out.    It is
the correctness of this ruling that is made the subject of
argument, and we shall confine our attention thereto.    To
begin with, it is no doubt the general rule that every owner
of soil has the right to a continuance of the lateral support
afforded thereto in a state of nature by the soil of his neigh-
bor.    The right is one of property, and the owner may
restrain any threatened interference therewith, or, if deprived
thereof, he may have recovery in the way of damages.    The
cases in which the doctrine is announced are extensively col-
lected in 1 Cyc. 775 *et seq.,* and we need not stop for further
citation.    And, on general view, we perceive no good rea-
son for making any distinction between those cases involving
the question of lateral support where a municipality is a
party and those in which the rights of individuals simply are

brought forward for consideration. It becomes manifest upon examination and reflection, however, that, when dealing with the subject-matter as related to the improvement of streets in municipalities, we are not given the situation which obtains ordinarily in cases arising between individual adjoining owners. A municipality takes title in fee to streets by authority of statute, and for a specific purpose. Having acquired title, it becomes its right — and, not only that, but subject to some qualifications as to time and manner, its duty — to "improve and repair." Code, section 751. Now, it is apparent to every observing man, and hence must have been to the Legislature, that a system of streets constructed to meet the requirements of the public is not possible in the average municipality by conforming strictly to the natural surface of the soil. There must be a cut here and a fill there. When, therefore, municipal authority was granted to acquire land for and to lay out streets, there. was annexed the general power to establish grades and to improve in accordance with such grades. Code, sections 751, 782. And it has never been doubted but that within the contemplation of the statute the right to grade and improve is coextensive with the limits of the street. *Gallaher v. City of Jefferson*, 125 Iowa, 324. Title as for a street being present, the municipality may not only enter upon and proceed to improve, but, in the language of the cases, the character and extent of the improvements to be made, as of grading, etc., is for the exclusive determination of the municipal authorities. The courts will not interfere with their action unless fraud or oppression is made to appear. *Dewey v. Des Moines*, 101 Iowa, 416.

As a matter of statute, it is nowhere provided that damages may be recovered by an abutting property owner occasioned by the work of bringing the surface of a street to the grade as originally established therefor. And, except in cases where a physical trespass and taking possession of the soil has been made to appear, or we have

been presented with allegation and proof of negligence in respect of the manner of doing the work, we have steadily refused to recognize any such right as existing at common law. *Creal v. Keokuk,* 4 G. Greene, 47; *Cotes v. Davenport,* 9 Iowa, 227; *Russell v. Burlington,* 30 Iowa, 262; *Hoffman v. Muscatine,* 113 Iowa, 332; *Reilly v. Ft. Dodge,* 118 Iowa, 633. It is to be observed, however, that in no one of our cases giving sanction to a recovery, was the right bottomed on the lateral support doctrine. And the subject-matter was not presented to the court or discussed in opinion as involving any question of constitutional right. In *Creal v. Keokuk,* the injury complained of consisted in plaintiff being compelled to raise his store building to conform to a grade established by the city for the street. The ground of the denial of a right of recovery was twofold. After speaking of the necessity for and benefits of municipal corporate organization, it is said in the opinion that every man who becomes a citizen of the municipality becomes a member of the corporation, and consents to the provisions and powers as well as the liabilities contained in the charter. One of these provisions authorized the grading of streets. " This," it is said, " was agreed to by the parties to the compact, and considered essential to the enjoyment of property and advancement and prosperity of the city. . . . It being for the mutual benefit of all that this power should exist and be incorporated into the charter, and the grading of the streets being necessary for the convenience of all, every man surrendered for his own good all objections to the prudent exercise of this power." The court then goes on to the further pronouncement that with title to the fee of the street there passed to the city as by grant the right to do all those things reasonably necessary to make it safe and convenient for the required purpose. In each of our cases which follow, the conclusion reached in *Creal v. Keokuk* finds approval without discussion. Counsel for appellees has not in argument taken note of these cases, and

this, we assume, on the theory that the filling of a street within its borders does not amount to a taking of the abutting property or any part thereof, and hence the cases are not in point.    Whether this is so or not, we shall have occasion to treat of on a later page of this opinion.

The general subject has, with more or less frequency, been dealt with by the courts elsewhere, and examination discloses that not a little conflict exists in the cases and among the text-writers.    Within proper limits, we can do no more than to call attention in a partial way to what has been said on the subject.    The English cases, and, almost without exception, the earlier cases in this country, hold to the doctrine of nonliability for damages variously denominated as " indirect," " incidental," or " consequental," arising out of the making of street improvements.    Of these a leading American case is *Callender v. Marsh,* 1 Pick. (Mass.) 418.    There the case was for digging down the street in front of plaintiff's dwelling house and taking away the earth, so as to lay bare the foundations of the house and endanger its falling, in consequence of which the plaintiff was obliged to build new walls, etc.— a case in its facts, as will be seen, very similar to the one we have before us.    The defendant, a street officer of the city, pleaded the statute authorizing the work of grading streets, and to this the plaintiff made reply that the statute was in excess of constitutional authority in that according to a provision of the Declaration of Rights no property of an individual can be appropriated to public uses without reasonable compensation being made therefor. In refusing to make application of the constitutional provision, the court said:    " There has been no construction given to this provision which can extend the benefit of it to the case of one who suffers an indirect or consequential damage or expense by means of the right use of property already belonging to the public.    It has ever been confined, in judicial application, to the case of property actually taken and appropriated by the government."    Finding that the

street had been properly laid out, the court proceeded to say further: " He who sells [to the city] may claim damages, not only on account of the value of the land taken, but for the diminution of the value of adjoining lots, calculating upon the future probable reduction or elevation of the street. And all this is a proper subject for the inquiry of those who are authorized to lay out, or of a jury if a party should demand one. And he who purchases lots so situated for the purpose of building upon them is bound to consider the contingencies which may belong to them." And this language was quoted with approval in the opinion in *Creal v. Keokuk.* Following this came the case of *Radcliff's Ex'rs. v. Mayor,* 4 N. Y. 195 (53 Am. Dec. 357). There, also, the case arose out of a street excavation whereby the soil of plaintiff's lot was caused to fall. A recovery was denied on the ground that the defendants were acting under authority conferred by the Legislature to grade, and were not answerable for the consequential damages sustained by abutting owners; the statute having made no provision for the payment of such damage. In the course of the opinion it is said: " Our .Constitution provides that private property shall not be taken for public use without just compensation. But I am not aware that this, or any similar provision in the Constitutions of other States, has ever been held applicable to a case like this. Although plaintiff's property has suffered damage, I find no precedent for saying that it has been taken for public use within the meaning of the Constitution." This case was cited in approval in the late case of *Uppington v. New York,* 165 N. Y. 222 (59 N. E. 91, 53 L. R. A. 550). The question presented in *Mayor, etc., v. Omberg,* 28 Ga. 46 (73 Am. Dec. 748), was in all respects similar. It was there said: " It being conceded that these proceedings are regular, that what has been done it was lawful to do, and the corporation not having transcended its authority, our conclusion is that, although the plaintiff has been injured, it is *damnum absque injuria.* People pur-

chase property and build in towns with full knowledge of public necessity to level streets by excavating or elevating as the case may demand; and they must take the chances and the consequences." And, further: " It cannot, we think, with any propriety be contended that this is taking private property for public use." In *M. E. Church v. City,* 31 Kan. 721 (3 Pac. 527), another excavation case, it was held that in the absence of any express provision of statute on the subject, a city cannot be made liable for incidental injuries arising from the exercise of its continuing authority to make changes in the grade of its streets; that in such there is no taking of private property for public use. In *Taylor v. St. Louis,* 14 Mo. 20 (55 Am. Dec. 89), the damage arose out of the excavation of an alley causing the soil of plaintiff's premises to cave in. It was held that here was not an exercise of eminent domain so as to require compensation. *Northern Trans. Co. v. Chicago,* 99 U. S. 635 (25 L. Ed. 336), was a case for damages growing out of an interference with access to plaintiff's property by a work of public improvement. And it was said: " That persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted alike in England and in this country." After citing several cases, among others *Callender v. Marsh,* the court proceeds: " The decisions to which we have referred were made in view of Magna Charta and the restriction to be found in the Constitution of every State, that private property shall not be taken for public use without just compensation being made. But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision." In *Smith v. Eau Claire,* 78 Wis. 457 (47 N. W. 830), the damage sought to be recovered was for an elevation of the street surface.

The doctrine of nonliability for consequential damages was declared, for, and the court adds: " The principle upon which the rule is based seems to be that the purchaser of a lot upon a street is supposed to calculate the chances that the grade of the street may be changed, and such contingency is an element which affects the price he pays for the lot." *Fellows v. New Haven,* 44 Conn. 240 (26 Am. Rep. 447), was an excavation case, and, as here, the complaint was of the sliding in of the soil of the abutting lots. A recovery was denied, and the holding was put on the ground that an injury of the character alleged must have been contemplated when the street was laid out, and damages consequent thereon must have been considered and compensation made or waived at such time. The foregoing reference to particular cases will be sufficient to indicate the trend of judicial decision. If the reader cares to exploit the subject further, he will find the cases well collected in Dillon on Municipal Corporations, section 989 *et seq.* and notes; in Cooley on Constitutional Limitations, 251 (note) ; in Lewis on Eminent Domain, section 92 *et seq.,* and notes, and in Abbott on Municipal Corporations, section 810 (note). See, also, the exhaustive dissenting opinion of Mr. Justice Hoyt in *Parke v. Seattle* 5 Wash. 1 (31 Pac. 310, 32 Pac. 82, 20 L. R. A. 68, 34 Am. St. Rep. 839).

Judge Dillon, in discussing the subject in his work (section 989), says: " In view of the nature of the streets and of that control over them which of right belongs to the State, and of the nature of the ownership of lots bounded thereon, which implies subjection, if not consent, to the exercise and determination of the public will respecting what grades or changes in grades thereof shall, from time to time, be found necessary, and what other improvements thereon or therein (within the legitimate purposes of streets) shall be found expedient, it results, we think, that adjoining property owners are not entitled of legal right, without constitutional or statutory aid, to compensation for damages

which result as an incident or consequence of the exercise of this power by the State, or the municipality by delegation from the State." And in section 992 he states it as his conclusion that, although adjoining property may suffer indirect or consequential damages as a result of street improvements, still it is not, in a constitutional sense, taken for public use. Judge Cooley in his work on Constitutional Limitations, p. 253, sums up his view of the subject thus: "If a city . . . orders and constructs public works from which incidental injury results to individuals, . . . an action will not lie for such injury. The reason is obvious. The maintenance of such an action would transfer to court and jury the discretion which the law vests in the municipality, but transfer them not to be exercised directly and finally, but indirectly and partially by the retroactive effect of punitive verdicts upon special complaints." ·

Of the cases which anounce a rule at variance with the class of which those cited above stand as examples are the following: *Stearns v. Richmond,* 88 Va. 992 (14 S. E. 847, 29 Am. St. Rep. 758); *Parke v. Seattle,* 5 Wash. 1 (31 Pac. 310, 32 Pac.82, 20 L. R. A.68, 34 Am. St. Rep. 839); *Dyer v. St. Paul,* 27 Minn. 457 (8 N. W. 272); *Damkoehler v. Milwaukee,* 124 Wis. 144 (101 N. W. 706). And the Ohio cases of which *Keating v. Cincinnati,* 38 Ohio St. 141 (43 Am. Rep. 421), is a type. The Ohio cases have from the beginning consistently declared for a liability doctrine, not on constitutional grounds, but upon the general principle as expressed in the maxim "*Sic utere tuo,*" etc. For the other cases it must be said that in no one of them was the decision made to rest on strict constitutional grounds. In each thereof the court was called upon to deal with a condition of peculiar hardship arising out of the withdrawal of lateral support in making a street excavation. And while the doctrine of nonliability for consequential damages as summed up by Judge Dillon, *supra,* was not impugned — on the contrary, adherence thereto was expressly announced in the Wisconsin and

Virginia cases — the several decisions were put upon the ground that the rule of lateral support as it obtains between individual landowners should obtain between a municipality and an abutting lot owner. And in this view, Mr. Lewis, in his work on Eminent Domain, section 101, concurs. Another class of cases cited to our attention may properly enough be taken note of. It has been variously held, both in this State and otherwhere, that a municipality may be charged as for a taking in the constitutional sense where in making a street fill the earth at the base of the embankment is permitted to encroach upon the abutting property. Of these cases *Hendershott v. City of Ottumwa,* 46 Iowa, 658, furnishes a sufficient example. It was there decided that the city had no right in making an embankment to enter upon plaintiff's lot and deposit earth thereon, and that it made no difference whether the deposit was directly made, or that the earth was permitted to roll down the sides of the embankment in such manner that it passed at once upon the lot. In either event, it would amount to an encroachment on the soil of the lot, and hence a direct trespass. In closing the opinion the court said: " We need not determine whether a city is liable for digging to the line of a street by which the soil upon the adjoining land is caused to fall, to the damage of the owner. There is a clear distinction between such a case and the case at bar. In making an excavation to the line of the street, there is no encroachment upon the adjoining land. The injury is not direct and immediate. It depends upon the lapse of time, the action of the elements, the depth of the excavation, and the character of the soil." It may be said in passing that, following the case thus cited, and furnishing a legislative view of the subject, came the act of the 25th General Assembly, now Code, section 784, which provides that cities of the first class in addition to the right to purchase shall have the extraordinary power to take by condemnation proceedings so much of the abutting lands as may be necessary to the construction of a street fill, to the end that the

street, when brought to grade, shall be of uniform surface to the full width thereof as laid out.    Upon the abutting property being brought to grade the city shall reconvey to the owner upon repayment of the original purchase or condemnation price.

Still another class of cases are cited on the brief of counsel for appellee, of which mention only need be made. In several of the States a change has been made in the form of constitutional expression, so that as now existing the mandate forbids, not only the taking of private property, but declares that it shall not be injured or damaged.    Expressly based on such a provision, it has been variously held that for indirect injuries or consequential damages caused to abutting property by the making of street improvements a recovery may be had.    We shall not attempt a discussion as to the soundness of the conclusion reached in these cases, because manifestly enough they cannot be accepted as authority, where, as in this State, no such constitutional provision exists.

With the general state of authority before us, we come to consider what shall be the rule adopted for the determination of the instant case.    The question is of much importance because common observation teaches that the facts as disclosed by the petition are not unusual in practical experience. In most of the cities and towns of this State grading work is necessary to the convenient use of streets, and elevations and excavations are frequent.    As the question is presented to us it may be divided thus:  (1) Must it be said that in the case of a street excavation which has resulted in the caving in of the soil of the abutting lots along the street line there has been a taking in contravention of the provision of the Bill of Rights?    (2) If not a taking in the constitutional sense, then shall the rule of our former cases be repudiated and the lateral support doctrine as the same has application in cases arising between individual owners be made to govern?

Quite naturally we address ourselves first to the constitutional question. It should be kept in mind in this connection that plaintiffs do not complain as of a direct and physical invasion upon their soil. They are not seeking to recover the value of the earth which caved off into the street. Their action is for damages to their premises as a whole, in the respect that the convenience of use has been destroyed in part, and the sale and rental value diminished. Now, as a general proposition, it would seem that there can be no disturbance of or interference with the property rights of an abutting owner without involving to some extent a taking. The right to light, air, of access, to be free from nuisance, etc., as well as the right of lateral support, are property rights, and it follows as matter of course that he who deprives the owner thereof in any degree is guilty of a taking. If without right, he may be held answerable. And, reasoning from one point of view, there can be no difference whether the taking is by an individual or by the public. It is manifest, however, that in many respects the relations existing between individuals, separately considered, cannot be accepted as in all respects the correct measure to judge of the relations between the citizen and the municipal body of which he is a part. In every citizen there is vested dual rights,— those individual to himself, as of life and property, and those which concern the general public of which he is a part. The former he may defend as against every other citizen, but it is the very essence of government, and fundamentally so, that private rights shall at all times be held subordinate to the public good. And to this every citizen is held, as by imperative decree, to have given his consent. Hence it is that reduced to a last analysis the Bill of Rights is no more than a bill of favors. It follows that whoever associates himself with the community in legal contemplation proclaims primary allegiance to the common good of that community as within bounds it finds expression in the voice of constituted authority. And his rights are those that the law gives

him. One of those rights, as we have seen, is that property accumulated by him shall not be taken for the use of the public without compensation. But with consistency this grant cannot be given force according to a literal reading of the language used. Thus it has never been considered that every property right conceivable, nor every possible taking, was included in the grant. And it could not well be. It would be subversive of public interests in the highest degree, and wholly intolerable, if every act done in the name of the government which should have effect, near or remote, to restrict or impair individual property holdings, could be made the basis of a legal demand for compensation. A recovery of damages for an injury which is merely an incident of community life, or which flows from the general and necessary operations of government, must be regarded as waived in virtue of the compact existing between the individual and the public, and, so considered, the force of reasoning in the statement respecting the subject as quoted from Judge Dillon bcomes fully apparent. It is in this view that courts in giving construction to the Constitution have held almost universally that there can be no recovery for indirect or consequential damages resulting from a work of public improvement. As applied to such cases, and to maintain a harmonious balance, the Constitution must be construed to mean not only that the taking must be direct, but it must amount to an actual invasion and appropriation of the abutting property or of some part thereof in such manner as to deprive the owner of the use thereof, as was complained of in *Hendershott v. Ottumwa, supra.* See the cases cited foregoing, and, generally on the subject, Cooley on Constitutional Limitations, 666. Also the cases collected in 8 Words and Phrases, 6852. To say otherwise would be to practically tie the hands of the State, acting through its municipalities, and prevent the making of most, if not all, those improvements which are universally considered essential, not only to the comfort and convenience of individual members

of the general public, but to the growth and development of our cities and towns. Not a street, park, or other public place could be opened, improved, or vacated; not a bridge, levee, market house, or other public building could be built, put into use, abandoned, or torn down, except upon payment of damages to every property owner making proof that the use of his property was being interfered with, or that the value thereof, in whole or in part, had thereby suffered or been taken away. Thus that one who suffers inconvenience in the use of his property, or loss in the value thereof, by reason of the vacation of a public street, cannot recover damages therefor on the ground that such constitutes a taking for public use, see *Barr v. Oskaloosa,* 45 Iowa, 275, and cases cited. Looking, now, to the case as here made by plaintiffs, it is clear that they have suffered no physical invasion or appropriation of their premises, nor have they been deprived of the free use thereof from one boundary line to the other. The city had the right, as we have seen, to make the excavation, and, had the soil been such as that the earth wall would have remained standing, by all the authorities there would have been no injury for which damages could be recovered. As it is, by combined force of what was rightfully done by the city, and the operation of a law of nature, plaintiffs have been deprived not of the possession, use, and control of their premises, but — and this is the extreme — of a quantity of earth from along the margin of the lot. And in saying this we do not overlook the fact that plaintiffs allege the necessity for the building of a retaining wall. That fact could only be considered, if at all, as an element of damage following a finding that there had been an actionable taking.

But we need not rest our holding for nonliability in cases like the one before us wholly on the ground as above stated. And in our further consideration we shall not be met with any question of constitutional right. Within our view the reasoning in *Callender v. Marsh, supra,* and ap-

proved in *Creal v. Keokuk,* to the effect that the grant to the city, whether by dedication, by condemnation, or purchase, carried with it the right to injure, if this need be in reason, the abutting property in making such improvements as the necessity of public travel should reasonably require, is unanswerable. And, indeed, in no one of the cases holding to the liability doctrine was there a serious attempt made to answer it. At the time, the landowner knew, of course, the purpose for which the city was acquiring the land, and that sooner or later the making of improvements would be entered upon. If his land was situated on a hilltop or in a ravine, he knew that when improvements came to be made there would be necessity for excavations and fills, and he must be held to have taken this into consideration when he made the dedication, or fixed the price on sale, or made his claim for damages on condemnation proceedings, as the case may have been. And the conclusive presumption must be indulged not only that the city in accepting of the dedication, or in paying the purchase or condemnation price, understood that there was included in the grant the right to inflict indirect injury, if necessary to a proper work of improvement, but that there was in fact included in the consideration for the grant compensation for such injury as might be reasonably expected to follow. And, this being true, it would be unjust in the extreme to permit a grantor to thereafter stand upon the position that having transferred to the city either by way of dedication, or for the highest price obtainable, he secretly reserved the right to sue for and recover a further sum as damages to his property when improvements should be undertaken, and this on the basis of its valuation, enhanced, it may be, a hundredfold, as of the time of the making of such improvements. It is plain, also, that one holding as a purchaser from such grantor would be in no different position. He must be held to have taken with knowledge and to have been governed in making his purchase accordingly. And this conclusion is of itself amply sufficient

to support a finding in the case against the contention of the plaintiffs.

This leaves as the phase of the subject remaining to be considered the question whether we shall depart from the rule of our former cases and announce a liability rule, either predicated upon the general maxim " *Sic utere tuo,*" or by holding that to cases such as we have before us the doctrine of lateral support should be given specific application. This we are wholly unwilling to do. Apart from the doctrine of *stare decisis,* to which we should be disposed to yield in the absence of any other reason, it must be manifest from what we have said on the foregoing pages of this opinion that a departure could have but one result, and that is the working out of positive injustice. And if it must be presumed, and that is what we hold, that compensation for injuries resulting from a proper ·exercise of power in making street improvements was either waived or paid, according as the city acquired the fee of the street by dedication or through private or condemnation sale, then it can require no argument to make evident the injustice should payment of a further sum be decreed as of the time of making the improvement, and the amount thereof to be determined with reference to the conditions then existing.

This opinion is already overlong, and we shall not attempt to pursue the subject further. It follows from what we have said that the court below was in error in its ruling sustaining the demurrer as appealed from. *Reversed.*

WEAVER, J., dissents.